HELICOPTEROS NACIONALES DE COLOMBIA, S.A. ("HELICOL"),
Appellant,

v.

Elizabeth HALL et al., Appellees.

No. 17882.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 22, 1981.

Rehearing Denied Feb. 26, 1981.

Soules, McCamish, Ingram, Martin & Brown, James E. Ingram, San Antonio, for appellant.

Helm, Pletcher & Hogan, George E. Pletcher, Houston, for appellees.

DOYLE, Justice.

This is an appeal from a money judgment awarded to appellees in a wrongful death action arising out of a helicopter crash in Peru, South America. Specifically, Helicopteros Nacionales De Colombia, S.A. (Helicol) is appealing from an order overruling its special appearance pursuant to Rule 120a, T.R.C.P.

We reverse and order the case dismissed.

Helicol, South American, corporation with its residence in Colombia, was sued by the appellees, survivors of four men killed in a helicopter accident which occurred in the jungles of Peru in January, 1976. Service was had upon Helicol under the "long-arm" statute, Tex.Rev.Civ.Stat.Ann., art. 2031b.

Although the actions by the survivors of the four men were filed separately, the four cases ultimately were consolidated for all purposes. Prior to consolidation, however, the special appearance pursuant to Rule 120a was timely filed in each of the causes. Pursuant to an agreement between counsel for Helicol and counsel for appellees, a special appearance hearing was conducted with testimony presented and evidence admitted in only one of the cases. It was agreed by the attorneys for all the parties that the testimony and evidence presented during that special appearance hearing would be filed and used as the testimony and the evidence presented by the parties in each of those cases. The courts in all four cases honored those agreements and after considering the testimony and the evidence, overruled the special appearances filed by Helicol. The transcribed testimony and attached exhibits which have been filed with this court on appeal are the same transcribed testimony and exhibits considered by the trial court in all four cases. A motion for reconsideration of the overruling of Helicol's special appearance was filed and also overruled. The case proceeded to a jury trial on the merits. A verdict was returned against Helicol and appellees were jointly awarded $1,141,200, together with post-judgment interest.

We are not here concerned with the record in this case as it relates to the verdict and judgment. Our sole concern is whether or not the evidence adduced at the special appearance hearing supports the overruling of Helicol's special appearance.

The appellant asserts two points of error, the first of which avers that the court erred in overruling the special appearance of Helicol because Helicol, a South American corporation, was not doing business in Texas and did not otherwise engage in acts which come within the purview of art. 2031b. By point of error two, Helicol complains that the trial court erred in overruling the Rule 120a special appearance of Helicol because Helicol, a foreign corporation, did not have sufficient contacts with Texas to meet the requirements of the constitutional minimum contacts test so that the exercise of *in personam* jurisdiction over Helicol offended the traditional notions of fair play and substantial justice as set out by the Fourteenth Amendment of the U.S. Constitution.

■ Pursuant to Rule 120a, a defendant may file a special appearance and if such appearance is overruled, the defendant may then enter a general appearance. By entering the general appearance, the defendant does not waive the right to appeal the denial of its special appearance. Rule 120a, T.R.C.P.

■ Originally, appellees attempted to serve Helicol by serving a sister subsidiary of Helicol, Avianca, Inc., a New York corporation authorized to do business in Texas. It was undisputed that while both subsidiaries are owned by Aerovais Nacionales De Colombia, S.A., that they have no mutual business connections. In *Gentry v. Credit Plan Corporation of Houston*, 528 S.W.2d 571 (Tex.1975), the court held that a subsidiary will not be responsible for the acts of a parent except "where the management and operations are assimilated to the extent that the subsidiary is simply a name or conduit through which the parent conducts its business." The evidence in the case shows Helicol is not a part of Avianca, Inc. and therefore jurisdiction cannot be maintained over Helicol by serving Avianca, Inc.

Appellees next sought to maintain jurisdiction over Helicol pursuant to art. 2031b. Article 2031b provides in pertinent part:

Sec. 3. Any foreign corporation . . . that engages in business in this State . . . and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of

engaging in such business within this State shall be deemed equivalent to appointment by such foreign corporations ... of the Secretary of State of Texas as an agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation ... is a party or is to be made a party. Sec. 4. For the purposes of this Act, and without including other acts that may constitute doing business, any foreign corporation, ... shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State. The act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside Texas shall be deemed doing business in this State.

In order to maintain jurisdiction over Helicol, it must be shown that it either committed a tort in Texas or entered into a contract to be performed in whole or in part in Texas. The undisputed evidence shows that the Helicopter crash occurred in the jungles of Peru. Clearly, Helicol did not commit a tort in whole or in part in Texas, and thus the tort requirements of art. 2031b are not met. The record is in dispute as to whether Helicol entered into a contract to be performed in whole or in part by either party in Texas.

The facts in this case show that a joint venture known as Williams-Sedco-Horn (WSH) contracted with Helicol to furnish helicopter transportation service in connection with the construction of a pipeline in Peru. WSH employed the four men who died in the helicopter crash. There was never a contract between Helicol and appellees and Helicol's services were to be provided only in Peru.

A dispute arises in the evidence as to whether the contract between WSH and appellants was negotiated in Texas, Oklahoma or Peru. Helicol introduced testimony to show the contract was negotiated in

Oklahoma; the parties discussed the amount and size of equipment in Houston, Texas, and that it was finalized, written and executed in Spanish in Peru. Helicol also showed that the contract required final approval from the Peruvian government. Payment for Helicol's services was invoiced in Peru and then American dollars were to be deposited in bank accounts in Panama and New York City. It is undisputed that the money came from a Texas bank where WSH had an account. Helicol did not have any bank accounts in Texas. The following testimony was offered by Mr. Restrepo, called by Helicol:

A: The contract that was entered into by Helicol with Williams-Sedco-Horn for the transportation that was involved in this accident, was that contract negotiated or signed in the United States?

A: No, sir.

Q: Where was it signed, sir?

A: Lima.

Q: That's Lima, Peru?

A: Yes.

Q: Where was this signed and executed?

A: In Lima, Peru.

Q: This contract, Mr. Restrepo, why was it executed for Helicol by a lawyer in Peru, can you tell the Court that?

A: Because it has to be done according to the Peruvian laws.

Q: The contract had to be executed in accordance with Peruvian laws, is that what you said?

A: Yes.

Q: Which Peruvian governmental agency handled the contractual negotiations?

A: The Peruvian Air Force.

Q: Did they participate in the writing of the contract?

A: Yes, they have to approve the contract.

Q: So the contract even had to be printed on official papers of Peru?

A: Yes, sir.

Q: Just to make it perfectly clear, Mr. Restrepo, this contract was not executed in the United states, is that right, sir?

A: No.

Q: He (Novak) testified in his deposition that you made the deal down here in Houston, that is where you entered into the agreement for Helicol to provide the helicopter services, is that right?

A: They called me to discuss the amount and the size of the helicopter, but the deal was already done, like I said, in Peru.

Further, the entire discussion of the jurisdiction question seems to be answered by paragraph 19 of the contract, which states that all parties agree that Lima, Peru, is the residence for all related to the contract and that the parties submitted to the jurisdiction of Peru.

▮ Appellees contend that the contract was to be performed in part in Texas because of a provision therein, "that payment must be paid by the main office . . ." of WSH. However, even if WSH's main office were in Houston, the contract directed that the payments be made to Helicol's accounts in New York or Panama City. Nor can we determine that the place of payment in the contract had any significant bearing on the parties' contractual relations. What difference could it have made with either party if the payments were made from Texas, California or wherever so long as they were in fact made? Consider the consequences of WSH's moving its "main office" to Mexico or elsewhere in the world. Would appellees then contend that such other places would be where the contract was to be partially performed? We conclude that such provision for payment "by the main office" could only mean that WSH was free to make the payments due to Helicol from wherever it chose.

▮ There seems to be absolute agreement by the courts, state and federal, that before a non-resident defendant can be made to answer to the jurisdiction of Texas under its "long-arm" statute, it must be shown that such defendant is susceptible to the threefold "minimum contacts" and "fair play" tests for jurisdiction as set forth in *O'Brien v. Lanpar*, 399 S.W.2d 340 (Tex. 1966) and affirmed in the recent Texas Supreme Court case of *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977):

1) The non-resident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

2) The cause of action must arise from, or be connected with, such act or transaction; and

3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the forum state afforded the respective parties, and the basic equities of the situation. Id. 399 S.W.2d at 342.

The evidence before us fails to show that any of the foregoing requirements was met so as to give Texas jurisdiction of appellees' causes of action.

In a very similar fact situation involving a fatal helicopter crash off the coast of Ghana, Africa, Judge Seals in *Reich v. Signal Oil and Gas Company*, 409 F.Supp. 846 (S.D.Tex.1974) aff'd. mem. 530 F.2d 974 (5th Cir. 1976), gives an exhaustive analysis of the requirements and the cases involving the Texas "long-arm" statute. In *Reich*, the plaintiffs sought to establish "doing business" in Texas by showing that the helicopter in question was manufactured in Italy by Agusta and leased to defendant Bristow, a British corporation, pursuant to a licensing agreement with Agusta. The helicopter was manufactured by Agusta according to a design owned by Bell Helicopter Co., a corporation doing business in Texas. The helicopter was never in Texas. The plaintiffs claimed jurisdiction in Texas because Bristow had "numerous and substantial business contacts in Texas" and Agusta had entered into a licensing contract in Texas. In holding that the plaintiffs had not met their burden as required by art. 2031b, the court stated:

However, assuming arguendo that Agusta's Licensing Agreement was entered into in Texas, Plaintiffs have not alleged

a contract cause of action, and this court has found no authority to support the thesis that one who is neither a party nor a third-party beneficiary to a contract may raise the contract for the purpose of establishing jurisdiction over a nonresident defendant. (citation omitted) But even if there were such a principle of law it is the opinion of this Court that under the facts of this case the Licensing Agreement would be insufficient to support a finding of jurisdiction. The mere fact of the existence of a contract possibly entered into in Texas does not provide jurisdiction in and of itself. The same basic factors of jurisdiction under the letter of the state statute and under the requirements of constitutional due process still obtain.

In the *U-Anchor* case, supra, the court observed that the Texas "long-arm" statute may reach only as far as the federal constitutional requirements of due process will permit and denied the Texas court jurisdiction over Burt, a nonresident. The basis of such denial was that Burt's contacts with Texas were minimal and fortuitous and that he had not "purposefully" carried on any activities within the state.

The facts before us are even stronger relative to Helicol's contacts with Texas. Helicol has neither offices, business records, employees, property, bank accounts nor a telephone number in Texas. It does not conduct business, advertise, nor perform any helicopter operations in Texas. It has never had a Texas charter nor has it ever had a contract to perform any work in Texas. Helicol's operations are based solely in South America. It is difficult to conclude that Helicol had any expectation of availing itself of the benefits and protections of the law of the state of Texas. We can find no indication that Helicol intended to make a profit from any business deal undertaken in Texas. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974).

■ Appellees' arguments, that "fair play" and "substantial justice" would best be served by requiring Helicol to appear before a court in Texas, are not persuasive. The persons killed in the helicopter crash were residents of Oklahoma, Illinois, Arizona and South America. None of them or their representatives had any contacts with Texas. The contract between Helicol and WHS specifically provided that all parties thereto were to be subject to the forum and laws of Peru. Clearly then, Texas has no special interest in the suit arising between parties to the contract who had already committed themselves to be bound by Peruvian law.

Appellees have failed to show that Helicol had sufficient minimum contacts with Texas as would invoke the contract, tort or fair play requirements of the Texas "long-arm" statute.

■ We have considered appellees' contention that Helicol's action in filing a suit against Bell Helicopter Company constituted a submission by Helicol to the jurisdiction of Texas. We do not agree that this is true. When Helicol filed its suit against Bell, Bell moved for and was granted a consolidation. Helicol's action, being a mandatory cross-claim under art. 2212a(2)(g), Tex.Rev.Civ.Stat.Ann., was required to be filed in the primary suit or lost. Helicol's right to relief against Bell had already been established when the primary suit was filed.

The judgments of the trial courts in overruling Helicol's special appearance are reversed; judgment is rendered granting Helicol's Rule 120a special appearance; and this case is ordered dismissed for lack of jurisdiction.

WARREN and EVANS, JJ., also sitting.