Nora McFEE, et al., Appellants,

v.

CHEVRON INTERNATIONAL OIL COMPANY, INC., et al., Appellees.

No. 01–87–00034–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 23, 1988.

Dana G. Kirk, Kirk & Carrigan, Andrew McKinney, Bean & Manning, Houston, for appellants.

Michael P. Graham, Baker & Botts, Houston, Joan Miller Denton, Asst. Co. Atty., Harris County, for appellees.

Before WARREN, DUNN and COHEN, JJ.

OPINION

COHEN, Justice.

The trial court granted appellees' special appearances under Tex.R.Civ.P. 120a, and dismissed appellants' claims due to lack of personal jurisdiction.

The decedent, Andy McFee, a subject of Great Britain, was killed by political rebels in the Sudan on February 2, 1984, while working for Seiscom Delta, a subcontractor of Chevron Oil Company of Sudan. The appellants, also British subjects, sued in

Harris County against Seiscom Delta, Chevron Corporation (the parent company), Chevron Oil Company of Sudan, and five other Chevron corporation subsidiaries. The appellants alleged that the defendants were grossly negligent in "undertaking and continuing" a project with imminent danger of guerrilla attack and in failing to provide adequate security for the employees.

The district court dismissed the claims against Chevron Oil Company of Sudan, Chevron Corporation, Chevron Overseas Petroleum Company, Inc., and Chevron Petroleum (U.K.), Ltd. Summary judgments were granted in favor of three other related corporations. The claims against Seiscom Delta were stayed due to bankruptcy.

On November 15, 1976, Chevron Oil Company of Sudan and United Geophysical Corporation, the corporate predecessor of Seiscom Delta, entered into a contract under which United Geophysical Corporation was to perform geophysical seismic exploration services for Chevron in the Sudan. This contract was negotiated and executed in Khartoum, Sudan and in San Francisco, California. In 1981, United Geophysical Corporation was purchased by Seiscom Delta. Seiscom hired the deceased in Britain to work in the Sudan pursuant to this contract.

In points of error one through four, appellants contend that the trial court erred in granting the special appearances.

Chevron Corporation, the parent company, owns 100% of the shares of the three other Chevron appellees. The record reflects that all of the revenues of Chevron Oil Company of Sudan flow back to the parent company, and its expenses are paid directly or indirectly by the corporate parent. The boards of directors of the various Chevron subsidiaries overlap, and the payroll for the subsidiaries comes out of "central payroll" in San Francisco, California, where the parent is located. Dr. Gary Connell, managing director of Chevron of Sudan at the time of the decedent's death, testified that security information, including decision-making about the safety in the Sudan, was shared by officials of Chevron Oil Company of Sudan, Chevron Overseas Petroleum, Inc., and the parent, Chevron Corporation.

Chevron Overseas Petroleum, Inc. is a Delaware corporation and has its principal place of business in San Francisco, California. It provided management, services, and assistance in preparing budgets for the Chevron Oil Company of Sudan. It does not have an office in Texas and is not qualified to do business in Texas.

Chevron Petroleum (U.K.), Ltd., is a Delaware corporation with its principal place of business in Great Britain. It is engaged in the exploration, production, and distribution of crude oil in the North Sea and has nothing to do with the Sudan or with Texas.

Chevron Oil Company of Sudan is incorporated in Delaware and has its principal place of business in Khartoum, Sudan. This company acquires and operates oil concessions and interests in Sudan. It does not do business in Texas nor is it qualified to do so.

Chevron Corporation is a Delaware corporation with its principal place of business in San Francisco, California. It is the parent company over all the world-wide Chevron operations and subsidiaries. Chevron Corporation is not qualified to do business in Texas. The record reflects that it does not do any business directly in Texas. Its domestic subsidiary, Chevron, U.S.A., was dismissed on summary judgment and is not a party to this appeal. Appellees' counsel stated at the hearing on special appearances that Chevron U.S.A., Inc. was the largest employer in Harris County.

Certain elements of the contract between Chevron Oil Company of Sudan and Seiscom Delta were performed in Houston, Texas. Palmer Greene, Seiscom's designated representative and manager of international operations, testified that in Houston, Seiscom provided logistical support, purchasing, shipping, and management personnel services to fulfill its obligations under the contract. He also testified that Seiscom's management decisions under this contract were generally made in Houston, and that the ultimate decision to remove employees from the Sudan at the time of

decedent's death would have been made by Seiscom's top management in Houston. He also stated that the only dealings of Seiscom Delta with Chevron that took place in Houston, were with Mr. Chuck Edwards, an officer for another Chevron subsidiary, Chevron Geosciences. These dealings were only in reference to the quality control of the geophysical data that was acquired in the Sudan. Mr. Greene testified that he recalled dealing with Mr. Edwards regarding the technical data related to the project in Sudan "a couple of times."

In *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that a state could assert in personam jurisdiction over a foreign corporation, if the foreign corporation has had minimum contacts with the state. These minimum contacts, it explained, must be such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158. The Supreme Court of Texas in *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966), stated the three requirements for exercising jurisdiction over a non-resident corporation:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction; and

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Id.* at 342.

■ Appellants contend that Chevron Corporation, the parent corporation, and Chevron Oil Company of Sudan, Chevron Overseas Petroleum, Inc., and Chevron Petroleum (U.K.), Ltd. are "doing billions of dollars of business in Texas" and are therefore amendable to personal jurisdiction in this state. In essence, they argue that Chevron U.S.A.'s business activities in Texas can be imputed to the parent corporation, Chevron Corporation, and in turn, to the other appellees.

The fact that Chevron Corporation owns 100% of Chevron U.S.A.'s stock is not sufficient to fuse that subsidiary into the parent corporation so as to establish the sort of agency relationship that the appellants allege. *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979); *see Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). The Texas Supreme Court stated in *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 573 (Tex.1975), that "[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of control that stock ownership gives to stockholders." Although *Gentry* is a case dealing with whether a subsidiary corporation will be regarded as the alter ego of its parent in an unreasonable collection efforts case, it has been cited by the Fifth Circuit in its discussion of personal jurisdiction in tort actions. *See Walker*, 583 F.2d at 167; *see Gutierrez v. Raymond Int'l, Inc.*, 484 F.Supp. 241 (S.D.Tex.1979).

In *Walker*, a passenger injured in an automobile collision in Germany brought a product liability action in Texas against the German manufacturer. The plaintiff contended that Opel, the German manufacturer, was doing business in Texas through the activities of its parent corporation, General Motors (GM). GM owned 100% of Opel stock, and marketed and sold Opel automobiles in Texas. The Fifth Circuit held that the relationship between Opel and Texas was "too attenuated" to support in personam jurisdiction. *Walker*, 583 F.2d at 168. It reasoned that Opel and its parent, GM, did not have the same corporate offices or the same registered agent, nor were there any mutual officers or directors. *Id.* at 167.

In *Gutierrez*, a Jones Act claim arose after a Spanish worker disappeared from a drilling barge in the North Sea. The plaintiffs, also Spanish citizens, sued the parent corporation, Occidental Petroleum, a California corporation, in Texas. The plaintiffs contended that Occidental of Britain, a subsidiary of Occidental Petroleum, was involved with the drilling platform. Occidental of Britain was a corporation that was never licensed to do business in Texas. The only contact with Texas was that the parent corporation was once authorized to do business in Texas. In holding that there was no in personam jurisdiction over Occidental Petroleum, the court stated:

> It requires stretching Article 2031b and the due process clause too far to sustain in personam jurisdiction in an action brought by Spanish citizens against an unlicensed, foreign corporation in order to adjudicate the liability of its foreign subsidiary arising out of acts unrelated to any business transacted in the forum state merely because the parent once was authorized to do business in Texas.

484 F.Supp. at 253.

The court reasoned that the only facts which the plaintiffs had shown were that Occidental of Britain was a wholly owned subsidiary, that certain of Occidental of Britain's officers also served the parent, and that those officers received their salaries from the parent. Likewise, in the present case, the relationship between Chevron U.S.A. and the parent, Chevron Corporation, and the relationship between Chevron U.S.A. and its sibling subsidiary corporations, Chevron Oil Company of Sudan, Chevron Overseas Petroleum, Inc., and Chevron Petroleum (U.K.), Ltd., are "too attenuated" to support personal jurisdiction.

The appellants contend that under *O'Brien*, Chevron Oil Company of Sudan did several acts in Texas that related directly to McFee's death. First, they contend that Chevron Oil Company of Sudan contracted with Seiscom Delta, a Texas company, for the performance of seismic work in Sudan. Secondly, they assert that this contract was partly performed in Tex-

as in that logistical support, purchasing, shipping, and management personnel services for the contract were handled in Houston, Texas. The original contract for the performance of seismic work in Sudan was executed in 1976 by Chevron Oil Company of Sudan and United Geophysical Corporation, a Delaware corporation that was acquired in 1981 by Seiscom Delta. The contract was negotiated in Khartoum, Sudan and San Francisco, California.

Without more, the assumption of jurisdiction based on this fact alone, will "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. There was no testimony or evidence that when Chevron Oil Company of Sudan entered into the contract with United Geophysical Corporation, a California corporation, it could have foreseen that three years later, United Geophysical would be purchased by Seiscom Delta. Therefore, there was no apparent intent by Chevron Oil Company of Sudan (or any other appellee) to do business in Texas. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In *3–D Electric Company, Inc. v. Barnett Construction Co.*, 706 S.W.2d 135 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), the court did not find the minimum contacts needed to assert personal jurisdiction over a Tennessee general contractor, based on construction work done on a motel in Colorado, when a breach of contract action was brought against it by a Texas electrical contractor. The Tennessee defendant's contacts consisted of telephone calls, correspondence, and payments made in Texas to the Texas contractor. The Texas contractor did some preliminary design work and information gathering in Texas and had also sent materials from Texas to the Colorado job site. The court held that the plaintiff's acts in Texas did not establish the necessary contacts to justify Texas jurisdiction over the Tennessee defendant. *Barnett*, 706 S.W.2d at 143. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357

U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). There must still be some act by the appellees by which they purposefully availed themselves of the privilege of doing business in Texas, thus invoking the benefits and protections of its laws. *Id.*

Appellants rely on *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In *Helicopteros,* the Supreme Court reversed the Texas Supreme Court's finding of jurisdiction, holding that there were no "continuous and systematic" business contacts with Texas. 466 U.S. at 408–09, 104 S.Ct. at 1869. In *Burger King,* the Supreme Court upheld jurisdiction in Florida over a Michigan franchisee because the franchise dispute arose directly from a contract that would have yielded numerous benefits in Florida, a substantial amount of information was transmitted to and from Florida, and the contract provided that the parties would be governed by Florida law. Because the appellants here have shown neither sufficient minimum contacts nor a choice of law clause in the contract, these cases are distinguishable.

 Appellants finally contend that appellees conspired with the other defendants to hide from the employees in the Sudan the danger that they were in, constituting a tortious misrepresentation that caused McFee's death.

Appellants must meet due process requirements by showing a conspiracy and connecting the acts of the resident conspirator and the non-resident conspirators. *Leasco Data Processing Equip. Corp. v. Maxwell,* 319 F.Supp. 1256 (S.D.N.Y.1970), *modified,* 468 F.2d 1326 (2d Cir.1972). However, "mere allegations of conspiracy, and even the presence of one co-conspirator within the jurisdiction, do not give jurisdiction over all the alleged co-conspirators." *Id.* at 1261. In *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir.1972), the court distinguished between the showing necessary to support a finding of liability and that necessary for the exercise of jurisdiction. It stated:

We believe, moreover, that attaining the rather low floor of foreseeability necessary to support a finding of tort liability is not enough to support in personam jurisdiction. The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him.

468 F.2d at 1341.

The only evidence of conspiracy here was that Dr. Gary Connell, managing director of Chevron of Sudan, testified that security information and decision-making concerning safety and operations in the Sudan was shared by officials of Chevron Oil Company of Sudan, Chevron Overseas Petroleum, Inc., and the parent, Chevron Corporation. Palmer Greene, Seiscom's manager of international operations, testified that the ultimate decision to leave or withdraw employees in the Sudan would have been made by Seiscom's top management in Houston. This evidence signifies neither a conspiracy nor connection between the acts of Seiscom and the appellees. Appellants have not shown that appellees knew or should have known that their discussions or decisions about the Sudan security situation would have an effect in Texas. Mere allegations of conspiracy and the presence of Seiscom in Texas do not give jurisdiction over appellees.

Appellants' points of error are overruled. The judgment is affirmed.