GENERAL ELECTRIC
COMPANY, Appellant,

v.

BROWN & ROSS INTERNATIONAL
DISTRIBUTORS, INC., Stephen
Pamas and Jerry Mares, Appellees.

No. 01–89–00369–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 31, 1990.

Rehearing Overruled Feb. 21, 1991.

Robert S. Ballentine, Robert D. Bernstein, Charles A. Moore, Houston, for appellant.

Alvin Zimmerman, Anthony Schram, Houston, for appellees.

Before SAM BASS, DUNN and O'CONNOR, JJ.

OPINION

O'CONNOR, Justice.

This is a special appearance. General Electric Company (GE), plaintiff, appeals from an order dismissing its suit against Brown & Ross International Distributors, Inc. (Brown & Ross), Jerry Mares, and Stephen Pamas, defendants. We reverse and remand the case for trial.

GE is a New York corporation that does business in Texas. Brown & Ross is a New York corporation. Pamas was the president and a shareholder of Brown & Ross. Mares was the vice-president and a shareholder of Brown & Ross. All of the defendants filed special appearances challenging personal jurisdiction. The trial court sustained their special appearances and dismissed G.E.'s suit for want of personal jurisdiction.

I. The special appearances

In points of error one and two, GE argues that the trial court erred in sustaining defendants' special appearances. GE maintains that the court should not have dismissed the suit for want of jurisdiction because defendants did not negate all theories of personal jurisdiction.

A. *Standard of review*

In the trial court, each defendant has the burden of proving lack of jurisdiction. Each one of them must negate every possible ground for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985); TEX.R.CIV.P. 120a. On appeal, we review the record to

determine if defendants negated every possible ground for personal jurisdiction.

### B. The exercise of jurisdiction by a Texas court

■ A Texas court may exercise jurisdiction over a non-resident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355 (Tex.1990); TEX.CIV.PRAC. & REM.CODE ANN. § 17.041–§ 17.042 (Vernon 1986).

#### 1. The Texas long-arm statute

The Texas long-arm statute lists actions which constitute "doing business" in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042. The nonresident who takes such action will be amenable to service of process by the secretary of state. TEX.CIV.PRAC. & REM. CODE ANN. § 17.044 (Vernon 1986). The statute provides that other acts of the nonresident may place him within the "doing business" requirement. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986); *see generally Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987), *cert. denied*, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988).

Under section 17.042, TEX.CIV.PRAC. & REM.CODE ANN., a non-resident does business in Texas if the non-resident commits a tort in whole or in part in this state. We find that the Texas long-arm statute authorizes the exercise of jurisdiction over these three defendants.

#### 2. Federal requirement of due process

Under the due process requirement, the court's assertion of jurisdiction over a non-resident requires minimum contacts with the forum state and fairness. *Schlobohm*, 784 S.W.2d at 357; *Escalona v. Combs*, 712 S.W.2d 822, 824 (Tex.App.—Houston [1st Dist.] 1986, no writ). The United States Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), established this theory. Simply stated, the plaintiff must prove a nonresident's "presence" in the state, so due process is not violated. *Schlobohm*, 784 S.W.2d at 357.

■ In the recent case of *Schlobohm*, the supreme court modified the second part of the test in *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966), to include continuing and systematic contacts in a three prong test. 784 S.W.2d at 357–358. As modified, the formula for Texas jurisdiction may be stated as:

1. Defendant's business in Texas would put a reasonable person on notice that he was subject to the call of a Texas court; and

2. The quality and quantity of defendant's business in Texas must have conferred on Texas courts either:

   a. Specific jurisdiction: (1) Defendant purposefully did some act or completed some transaction in Texas; (2) which gave rise to plaintiff's cause of action, or was connected with that act or transaction; or

   b. General jurisdiction: Defendant had continuing and systematic contacts with Texas; and

3. The assumption of jurisdiction by Texas courts must not offend traditional notions of fair play and substantial justice.

*Schlobohm*, 784 S.W.2d at 357–358. In analyzing the requirement of fair play and substantial justice, we must consider: the quality, nature, and extent of the activity in Texas; the relative convenience of the parties; the benefits and protection of the laws of Texas afforded the respective parties; and the equities of the situation. *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978); *O'Brien*, 399 S.W.2d at 342.

There are three inquiries we must make as to each defendant. First, did the defendant purposefully avail himself of this forum? In *Schlobohm*, the supreme court explained that, to satisfy this inquiry, we ask if the defendant should have reasonably expected the call of a Texas court. 784 S.W.2d at 359.

Second, can Texas courts exercise specific or general jurisdiction over each defendant? If the cause of action arose from or was connected with the purposeful act that defendant completed in Texas, Texas courts have *specific* jurisdiction. If defendant had continuing and systematic contacts in Texas, Texas courts have *general* jurisdiction. Under the newly re-formulated general jurisdiction, the supreme court said we should carefully investigate all contacts and compile, sort, and analyze them for proof of a pattern of continuing and systematic activity. *Schlobohm*, 784 S.W.2d at 359.

Third, would the assumption of jurisdiction over this defendant offend traditional notions of fair play and substantial justice? The main question is whether litigation in a Texas court would be excessively burdensome or inconvenient for the defendant. *Schlobohm*, 784 S.W.2d at 359.

### C. *Brown & Ross*

#### 1. Purposeful availment

The first question is whether Brown & Ross purposefully availed itself of the privileges of conducting business in Texas. Brown & Ross asserts that it had no warning that its activities in Texas would put it on notice that a New York corporation would hale it into a Texas court. GE maintains that it did. GE points to the July 7, 1983 licensing agreement Brown & Ross executed with Atlantic Export & Import Company (Atlantic), a company in Texas, which made Atlantic its sales agent for GE products. After signing the agreement, Brown & Ross changed its letterhead to list Houston as one of its business locations.

When a corporation purposefully avails itself of the privilege of conducting activities with the forum state, it has clear notice that it is subject to suit there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Kawasaki*, 699 S.W.2d at 201. Brown & Ross expected to profit from its activities here, and it received a benefit from Texas residents and Texas state laws. *Zac Smith*, 734 S.W.2d at 665–66. Brown & Ross could reasonably have assumed that a Texas court might call.

#### 2. General jurisdiction

The second question is whether a Texas court had specific jurisdiction or general jurisdiction over Brown & Ross. On this record, Brown & Ross had many contacts in Texas.

Brown & Ross had about 20 Texas customers. The record shows that substantial sales of counterfeit GE parts took place in Texas. Atlantic, its agent in Texas, told many Texas companies that Brown & Ross was distributing genuine GE parts. Instead, Brown & Ross was tagging parts from other sources with GE numbers, and printing its own GE envelopes for packaging. Brown & Ross assembled the counterfeit parts and distributed them through its Texas agent.

The courts agree that routine sales and other profit-making activities in another state will subject a corporation to general jurisdiction in that state. In *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, the Supreme Court said that if a non-resident defendant sells its product in a state, through its own efforts or those of a distributor, the courts of that state may reasonably assume jurisdiction over that non-resident defendant.

When Brown & Ross entered into a contract with Atlantic, a Texas company, and made routine sales to Texas companies, it engaged in continuous and systematic activity. Even though Brown & Ross was not physically present in Texas, it enjoyed profits from sales to Texas companies. Because it deliberately engaged in continuous and systematic activities here, Brown & Ross should be subject to jurisdiction by Texas courts. *Schlobohm*, 784 S.W.2d at 358.

#### 3. Fair play

The last question is whether "traditional notions of fair play and substantial justice" are offended by a Texas court asserting jurisdiction over Brown & Ross. *International Shoe*, 326 U.S. at 316, 66

S.Ct. at 158; *Schlobohm*, 784 S.W.2d at 359. Brown & Ross argues that most of the sources of evidence will be in New York. Brown & Ross also argues that the expense would be too burdensome if it had to come to Texas to litigate this action.

GE responds that, because the sale of counterfeit parts took place in Texas, proving the case in New York would not be any easier than in Texas. Because Brown & Ross apparently did most of its Texas business in Houston, GE would have to go to similar expense to litigate this suit in New York. We find that "traditional notions of fair play and substantial justice" are not offended by a Texas court's assertion of jurisdiction over Brown & Ross.

### D. *Mares and Pamas*

■ During the trial court hearing, Mares and Pamas argued that they are immune from jurisdiction in Texas, because they acted in a corporate capacity. The United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984), stated that employee status does not insulate a person from jurisdiction. The status of Mares and Pamas as former employees of Brown & Ross does not insulate them from Texas courts. In *Calder*, the Court said we must test each defendant's contacts with the forum state separately. *Id.*

#### 1. Purposeful availment

■ The next question is whether Mares and Pamas purposefully availed themselves of the privileges of conducting business is Texas. Mares, in traveling to Houston to set up the scheme, could have expected the call of a Texas court. Pamas did not travel to Houston. Pamas, however, participated in the illegal acquisition of GE's secret drawings and used them to defraud Texas customers. Pamas, in participating in the scheme to defraud Texas customers, could have anticipated the call of a Texas court.

#### 2. Specific jurisdiction

The second question is whether a Texas court had specific jurisdiction or general jurisdiction over Mares and Pamas. On this record, Mares and Pamas did not have many contacts in Texas, but did have specific contacts that gave rise to the suit.

The conduct of Mares and Pamas does not appear to rise to a level of "continuous and systematic" activity. There was, therefore, no general jurisdiction over Mares and Pamas. If the Texas court had jurisdiction over them, it was only under the theory of specific jurisdiction. Before a Texas court can assume specific jurisdiction over them, we must find that Mares and Pamas purposefully did some act in Texas, and that the controversy arose out of their contacts. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *O'Brien*, 399 S.W.2d at 342.

■ In July 1983, Mares traveled to Houston for a two-day meeting, during which Atlantic agreed to be Brown & Ross' sales agent. In 1984, Vasquez, of Atlantic, called Mares from Texas and asked Mares to get GE's drawings. Mares and Pamas bribed John Higgins, a sales specialist in GE's gas turbine department, to get the drawings. Higgins took a secret drawing of GE's gas turbine parts after Mares and Pamas agreed to pay him significant sums of money. Both Mares and Pamas pled guilty to commercial bribery and unlawful use of secret scientific material based on their dealings with Higgins. The drawings were sent to Mares in New York, and then delivered to Atlantic in Houston. After Mares and Pamas got the drawings, they also paid Higgins to divert GE customers to Brown & Ross. Mares and Pamas signed the checks to pay Higgins.

Through the efforts of Mares, Pamas, Higgins, and other salespersons, many Texas companies were told that Brown & Ross was distributing genuine GE parts. Several of the Texas GE customers were diverted to Brown & Ross, and unknowingly bought counterfeit parts.

Mares made at least two trips to Houston to solicit business. He continuously made phone calls to Atlantic and several customers in Texas. Mares admitted he

personally deceived Exxon. He initiated and planned the theft of GE's trade secrets (drawings), which resulted in sales of counterfeit GE parts to Texas customers. GE discovered these actions and filed suit. This controversy arose, in large part, out of Mares' actions.

GE's lawsuit was the direct result of Mares' tortious acts. The evidence supports a prima facie showing, for jurisdictional purposes, that Mares committed the tortious acts and purposefully directed his actions toward GE customers in Texas. Mares is subject to personal jurisdiction in Texas.

■ The evidence does not show that Pamas made personal trips to Texas. Pamas participated in the theft of GE's secret drawings. Pamas signed the commission checks for the sales of counterfeit parts to Texas customers. Pamas had routine telephone conversations with Atlantic in Texas and personally supervised salespersons who handled Texas customers that bought counterfeit GE parts.

■ In *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434, 438 n. 5 (Tex.1982), the Texas Supreme Court stated that a nonresident need not be physically present in the state. The non-resident must, however, take some action from which we can infer a reasonable foreseeable result occurring in Texas. In *Siskind,* the individual respondents did not personally solicit business in Texas and were not involved in a conspiracy. There were not, therefore, enough contacts to justify the exercise of personal jurisdiction. *Id.*

■ In this case, however, evidence shows that all defendants were involved in a conspiracy. When a plaintiff alleges a conspiracy, the non-resident defendant must know, or have good reason to know, that his conduct will have effects in the forum state. *See McFee v. Chevron Int'l Oil Co.*, 753 S.W.2d 469, 473 (Tex.App.— Houston [1st Dist.] 1988, no writ). The record shows that Pamas conspired to sell counterfeit parts in Texas, and he knew that his conduct would affect customers in

this state. Pamas should also be subject to jurisdiction in Texas.

### 3. Fair play

■ The last question is whether "traditional notions of fair play and substantial justice" are offended by a Texas court asserting jurisdiction over Mares and Pamas. We must determine whether, despite the existence of minimum contacts, there is any reason why our assertion of jurisdiction over Pamas and Mares would offend traditional notions of fair play and substantial justice. Nothing in the record shows that litigation in a Texas court would be excessively burdensome or inconvenient to Mares or Pamas.

We hold that the exercise of jurisdiction over Mares and Pamas does not offend traditional notions of fair play and substantial justice. We sustain the first and second points of error.

### II. Waiver of special appearance

■ In GE's third point of error, it asserts that defendants waived their special appearances, and entered general appearances, by asserting the doctrine of forum non conveniens in their brief in support of special appearance.

Rule 120a, TEX.R.CIV.P., requires a defendant to make a special appearance in a sworn motion and file it before any other plea, pleading or motion. The rule permits a defendant to include any other pleading in the same instrument as the special appearance, or file any other pleading after the special appearance, without waiver of the special appearance.

In this case, defendants asserted the doctrine of forum non conveniens in a brief. This was not a separate plea, pleading, or motion. Defendants made the argument in support of the special appearances, as part of their argument under fair play and substantial justice, the third element of personal jurisdiction. Even if their brief was a pleading, defendants filed it after the special appearances. We hold that defendants did not waive their special appearance.

We overrule GE's third point of error.

III. Request for findings of fact

After the trial court entered its order, GE requested findings of fact and conclusions of law. The trial court did not submit any findings. On appeal, GE asked that this Court abate the appeal, pending the submission of findings by the trial court. We denied its motion.

In its fourth point of error, GE asserts that its ability to prosecute this appeal was prejudiced because the trial court did not file findings of fact. Because we are sustaining GE's points on jurisdiction, the record shows that GE has not suffered any injury because of the trial court's failure to file findings. *See Cherne Indus. Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex. 1989).

We overrule GE's fourth point of error.

IV. Motion to limit discovery

In its fifth point of error, GE urges the trial court erred in granting defendants' motion to limit discovery to documents and transactions through December 31, 1985. GE argues that it believes defendants had continuous and systematic Texas contacts in 1986 and 1987, and it was entitled to that information to show general jurisdiction over defendants. Because we are sustaining GE's points on jurisdiction, the record shows that GE did not suffer any injury because of the trial court's ruling on discovery. We overrule the fifth point of error.

OPINION ON MOTION FOR REHEARING

In their motion for rehearing, defendants contend we reviewed the trial court's decision de novo, when we should have applied the factual and legal sufficiency test to the evidence. The appropriate standard of review in the appeal of a special appearance case is to review all the evidence in the record. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 358 (Tex.1990); *Helicopteros Nacionales v. Hall,* 616 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1981), *reversed,* 638 S.W.2d 870 (Tex.1982), *reversed, Helicopteros Nacionales v. Hall,*

466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

We conclude we applied the correct standard of review and we overrule the motion for rehearing.