Opinion issued November 3, 2005








In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00469-CV




CAPITAL PACIFIC, L.L.C. and B. SCOTT FULLER, Appellants

V.

HUMBLE GARDEN, L.L.C.,; COURTNEY B. ROBERTS; MICHAEL J.
AND CHERI L. CHAMP; JERRY AND JULIE STEINER; RICHARD G.
AND BARBARA L. LINDSAY; PATRICK J. AND SHEILA A. FOLKINS;
JEFFREY D. AND JOANN J. BOYD; ROLF R. AND LEE ANN
PETERSON, AS TRUSTEES OF THE PETERSON FAMILY REVOCABLE
TRUST OF 1992; HOLLY H. BUSSE; FOOD MART EUREKA, INC.;
MARY ANN LUCCHESI; JAMES N. AND LINDA E. LUCCHESI; VP
PROPERTIES, L.L.C.; AND DAVID P. JONES, Appellees




On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2004-58991




MEMORANDUM OPINION
          Appellants, Capital Pacific, L.L.C. and B. Scott Fuller, appeal from the denial
of their special appearance.


 We affirm.
BACKGROUND
          This case stems from a real estate transaction concerning a piece of commercial
property in Texas. Appellees, Humble Garden, L.L.C., Courtney B. Roberts, Michael
J. and Cheri L. Champ, Jerry and Julie Steiner, Richard G. and Barbara L. Lindsay,
Patrick J. and Sheila A. Folkins, Jeffrey D. and Joann J. Boyd, Rolf R. and Lee Ann
Peterson, as trustees of the Peterson family revocable trust of 1992, Holly H. Busse,
Food Mart Eureka, Inc., Mary Ann Lucchesi, James N. and Linda E. Lucchesi, VP
Properties, L.L.C., and David P. Jones, a group of individual and institutional 
investors from California, Oregon, and Washington, were plaintiffs in the action
below. Capital Pacific, L.L.C. (“Capital”), a real estate brokerage firm with its
principal place of business in Oregon, and B. Scott Fuller (“Fuller”), a member of
Capital and a resident of Oregon, were named defendants below.
          In 2003, Capital, via Fuller, entered into a contract with the co-defendants
(“Texas Sellers”)


 to serve as broker with the “exclusive right to sell” Garden Ridge,
a large retail store located on FM 9450 in Humble, Texas. Appellants marketed the
property in a variety of ways, including a two-page advertisement that provided such
information as the expected rental income from the property, the length of the lease,
and other information relevant to a prospective purchaser. Appellants were further
responsible for preparing a due diligence report for any “potential purchasers.” 
Additionally, Fuller traveled to Texas to meet with one of the Texas Sellers regarding
the Garden Ridge store. 
          According to an affidavit supplied by appellees, but disputed by appellants,
appellants were involved in a conference call with, inter alia, Humble Garden and
one of the Texas Sellers regarding the Garden Ridge store and its lease in connection
with the property. After this conversation, appellees requested the due diligence
report prepared by appellants and then tendered an offer to purchase the Garden
Ridge property. From the sale of the property, appellants received a $102,000
commission from Charter Title, a Texas title company. 
          Shortly after acquiring the Garden Ridge property, the tenant, from whom the
appellees expected over a million dollars a year in rental income, filed for bankruptcy,
which resulted in a substantial depreciation of the property’s value. Appellees
charged that appellants and the Texas Sellers had material knowledge of the financial
distress of the tenant and brought suit claiming common law fraud, statutory fraud in
the sale of real estate, negligent misrepresentation, fraudulent inducement, and civil
conspiracy to commit fraud. 
          Appellants challenged personal jurisdiction by special appearance, which was
denied by the trial court. Appellants then timely filed this interlocutory appeal. 
Capital, in its sole issue, contends that the evidence is legally and factually
insufficient to support the trial court’s implied legal conclusion that specific or
general jurisdiction lies. Fuller raises the same issue as applied to him in his
individual capacity
STANDARD OF REVIEW
          The existence of personal jurisdiction is a question of law reviewed de novo by
this court. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789 (Tex. 2002).
However, this question must sometimes be preceded by resolving underlying factual
disputes. Id. at 794. When, as here, the trial court does not issue fact findings, we
presume that the trial court resolved all factual disputes in favor of its ruling. Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805-06 (Tex. 2002). If the
appellate record contains the applicable trial record, these implied findings are not
conclusive, and an appellant may challenge them for evidentiary sufficiency. BMC
Software, 83 S.W.3d at 795. “For legal sufficiency challenges to personal jurisdiction,
as long as there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails.” Id. at 795.
 PERSONAL JURISDICTION 
          Personal jurisdiction over non-resident defendants is governed by Texas’s long-arm statute. Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–045 (Vernon Supp. 2004-05).


 The long-arm statute allows Texas courts to exercise jurisdiction over a
nonresident defendant that “does business” in the state. Id. at § 17.042. While the
statute lists certain activities that fall within the definition of doing business, the list
is not exhaustive. BMC Software, 83 S.W.3d at 795. The Texas Supreme Court has
held that “section 17.042’s broad language extends Texas courts’ personal jurisdiction
as far as the federal constitutional requirements of due process will permit.” Id.
(citation omitted).
          Personal jurisdiction over nonresident defendants is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the forum
state and (2) the exercise of jurisdiction comports with traditional notions of fair play
and substantial justice. Id. (citing Int’l Shoe Co. v. Washington, 326 U.S. 310, 316,
66 S. Ct. 154, 158 (1945)). A nonresident defendant must have “purposefully availed”
itself of the privileges and benefits of conducting business in the foreign jurisdiction
to establish sufficient contacts with the forum to confer personal jurisdiction. Id.
(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76, 105 S. Ct. 2174, 2183-84 (1985)). 
          “The purpose of the minimum-contacts analysis is to protect the defendant from
being haled into court when its relationship with Texas is too attenuated to support
jurisdiction.” Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex.1990). Therefore,
we examine the defendant’s activities and expectations “in deciding whether it is
proper to call it before a Texas court.” Am. Type, 83 S.W.3d at 806 (citation omitted). 
While not dispositive to our inquiry, foreseeability on the part of the defendant that
his “conduct and connection with the forum are such that he should reasonably
anticipate being haled into court there” is an important factor in the personal
jurisdiction calculus. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297,
100 S. Ct. 559, 567 (1980).
          Minimum contacts analysis is further divided into general and specific personal
jurisdiction. CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996). Specific
jurisdiction lies when the defendant’s alleged liability arises from or is related to an
activity conducted within the forum. BMC Software, 83 S.W.3d at 796. General
jurisdiction will attach when “a defendant’s contacts in a forum are continuous and
systematic so that the forum may exercise personal jurisdiction over the defendant
even if the cause of action did not arise from or relate to activities conducted within
the forum state.” Id.
A. Specific Personal Jurisdiction over Capital


 
          Capital’s central contention is that any of its alleged liability results from acts
that did not take place in Texas because “any representations by Appellants to
Appellees occurred outside of Texas and were directed from Oregon towards
California, Oregon, and/or Washington, not Texas.” That is, because any fraud or
negligent misrepresentation—and any concomitant reliance upon such—occurred
outside Texas, no specific personal jurisdiction lies. In support of this argument
Capital relies on (1) BMC Software, 83 S.W.3d at 879; (2) an analysis of each piece
of jurisdictional evidence independently from the others; (3) their allegation that the
identity of the affiant, who testified to the conference call between, among others,
Capital and appellees, is unknown to them; and (4) their contention that the mere
presence of property within the forum is not enough for specific jurisdiction to attach.
          1. BMC Software 
          BMC Software involved a Belgian citizen who, during negotiations with BMC
Software Belgium, a wholly owned subsidiary of a Houston corporation, was promised
a significant amount of stock options. BMC Software, 83 S.W.3d at 793. After he was
terminated without the promised stock options, the Belgian citizen sued both the
Belgian software company and its Houston parent for breach of contract, fraud,
negligent misrepresentation, and declaratory relief, alleging that the Houston firm and
its Belgian subsidiary conspired—in talks taking place in Houston—to deprive him
of the stock options. Id. at 793. 
          The Belgian subsidiary filed a special appearance that was eventually upheld
by the Texas Supreme Court. Id. at 789. The court noted that the Belgian company
negotiated with the plaintiff, a foreigner, in Europe; that the plaintiff accepted his
offer to work in Europe and was employed in Belgium; and that the Belgian subsidiary
made no representations to the plaintiff in Texas and that “he did not rely to his
detriment on the conversation in Texas.” Id. at 797. 
          Capital claims that this case is dispositive, pointing to the Texas Supreme
Court’s language stating that “the nature of the claims demonstrate that they can only
arise from [the Belgian subsidiary’s] contact with [the plaintiff], which all occurred
outside Texas.” Id. at 797. This case, however, is not as decisive as Capital’s
argument implies. While the BMC Software court was clearly concerned with haling
into court a Belgian corporation with no ties to the forum—other than simply being
owned by a Texas corporation—this is not analogous to the instant case. 
          Capital attempts to reconcile the BMC Software facts with its facts by arguing
that (1) it was not a party to the actual sale of the property and (2) any contact it had
with Humble Garden occurred in Oregon or California. These arguments, however, 
selectively view the present factual situation and “focus[es] on only part of the overall
situation.” Glattly v. CMS Viron Corporation, No. 01-04-00998-CV, 2005 WL
1111462, at *7 (Tex. App—Houston [1st Dist.] May 5, 2005, no pet.). 
          As an initial matter, appellees have alleged that Capital did have contact with
the forum, and it is undisputed that (1) Fuller, in his role as an employee of Capital,
visited the Garden Ridge property in Texas—the property that is at the heart of this
lawsuit; (2) Capital prepared a due diligence report regarding the subject property; and
(3) Capital received the $102,000 commission for sale of a Texas property from a
Texas title company. It is the quality and nature of the defendant’s contacts, rather
than their number, that is important to the minimum contacts analysis. Guardian
Royal Exch. Assurance., Ltd. v. English China Group, P.L.C., 815 S.W.2d 223, 230
n.11 (Tex. 1991). Capital’s undisputed actions are all related to an activity—selling
the property—within the forum. 
          Moreover, the two contracts here—the brokerage contract between appellant
and the Texas Sellers and the contract for the sale of property—were interrelated. This
is especially so because Capital was closely involved with the Texas Sellers in
marketing the property and preparing the due diligence report. See Glattly, No. 01-04-00998-CV, at *6-7 (rejecting appeal from denial of special appearance where appellant
was not party to one of a series of contracts because each contract involved in the
dispute played material role in bringing overall transaction to fruition). Capital’s
alleged tortious conduct “related to activities in Texas and could potentially have a
significant effect in that forum.” Id. at *7.
          2. Jurisdictional Evidence
          Appellant’s brief separates each piece of jurisdictional evidence to support
specific jurisdiction and then argues that each piece of evidence, standing alone, is not
enough for jurisdiction to attach.
          However, the jurisdictional calculus is not performed in an evidentiary vacuum.
It is clear that Capital’s liability, if any, is related to an activity conducted within the
forum. See BMC Software, 83 S.W.3d at 796. As mentioned above, Capital was the
exclusive broker for the Garden Ridge property located in Texas, Fuller visited the
Garden Ridge property that forms the basis of this controversy, Capital prepared a due
diligence report regarding the subject property, and Capital received the $102,000
commission for sale of the Texas property from a Texas title company. To reiterate,
all of this conduct is related to an activity—selling the property—within the forum. 
See Aviles v. Kunkle, 978 F.2d 201 (5th Cir. 1992) (holding that to exercise specific
jurisdiction, defendants’ forum contacts that are asserted as basis for jurisdiction must
be related to subject matter of controversy); Cent. Tex. Cattle Co. v. McGuiness, 842
S.W.2d 388 (Tex. App.—San Antonio, 1992, no writ) (holding that Texas courts have
specific jurisdiction over nonresident defendant if his activities in Texas are isolated,
but cause of action arises from those activities).
          3. The Affidavit
          Capital further claims that it does not know the author of the conference-call
affidavit, C. Todd Endres, stating that he is “an unknown individual who is not a party
to this action.”


 However, appellees point out that, in addition to the affidavit, the 
record also contains a letter concerning the contract for sale of the Garden Ridge
property from Endres to one of the Texas Sellers on which Fuller was copied. 
Moreover, that same letter is stamped “Read & Approved by B. Scott Fuller.” Capital
argues alternatively that even if this affidavit is credible, it is insufficient to support
specific jurisdiction because the conference call took place in Oregon and California,
not Texas. Guardian Royal Exch., 815 S.W.2d at 231. 
          We disagree. Capital quotes BMC Software for the proposition that a
defendant’s activities must be “conducted within the forum.” However, the full quote
reads that such jurisdiction is “established if the defendant’s alleged liability arises
from or is related to an activity conducted within the forum.” BMC Software, 83
S.W.3d at 796 (emphasis added). As established above, Capital’s activities fall
squarely within the BMC Software Court’s jurisdictional admonition.
          4. Presence of Property
          Capital contends that because the conference call, the marketing, and all their
other activities connected with the Garden Ridge property were conducted outside the
forum, the only possible basis for jurisdiction is the physical location of the property.
Moreover, Capital argues, none of the appellees are residents of Texas, so no
misrepresentations could have been directed at Texas.
          We note that, as a preliminary matter, the fact that no appellees are Texas
residents is not as important as Capital’s argument implies. First, the minimum
contacts test asks us to focus on “whether the defendant has established minimum
contacts with the forum state.” BMC Software, 83 S.W.3d at 795 (citing to Int’l Shoe,
326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (emphasis added). As discussed above,
Capital has established just those sorts of contacts. Additionally, Capital gives us no
compelling reason why a California or Oregon court should, or could, exercise
jurisdiction over a dispute about real estate in Texas. 
          Second, Capital’s argument that the only possible basis for jurisdiction is the
physical location of the property fails. As support, Capital cites the United States
Supreme Court case Shaffer v. Heitner for the proposition that the mere “presence of
property alone would not support the State’s jurisdiction.” 433 U.S. 186, 209, 97 S.
Ct. 2569, 2582 (1997). However, the Court went on to say that “the presence of
property in a State may bear on the existence of jurisdiction by providing contacts
among the forum State, the defendant, and the litigation. Id., 433 U.S. at 207, 97 S.
Ct. at 2581. 
          That is exactly the case here—it is not simply because the Garden Ridge
property is physically in Texas that specific jurisdiction lies, but that the location of
the property forms the heart of the underlying lawsuit here. In addition to the location
of the property, Capital’s acts of traveling to Texas to inspect the property, preparing
a due diligence report, and receiving a financial benefit, in the form a substantial
commission, from the sale of the Garden Ridge property, “provid[e] contacts among
the forum State, the defendant, and the litigation.” See id. 
          Both the United States and Texas Supreme Courts have held that “it is ‘the
defendant’s conduct and connection with forum’ ” that are critical. Michiana Easy
Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 789 (Tex. 2005) (citing Burger King
Corp., 471 U.S. at 474, 105 S. Ct. at 2183 (1985)). Moreover, it is the quality and
nature of the defendant’s contacts, rather than the number, that is important to the
minimum contacts analysis. Guardian, 815 S.W.2d at 230 n.11. Since there is “more
than a scintilla of evidence” to support the trial court’s findings that Capital’s conduct
and activities were both within and directed toward Texas, we hold that specific
personal jurisdiction exists over Capital. BMC Software, 83 S.W.3d at 795. Further,
because we hold that Texas courts have specific personal jurisdiction over Capital, we
need not reach Capital’s alternative challenge to general personal jurisdiction.


 
Accordingly, we overrule Capital’s sole point of error.
B. Specific Personal Jurisdiction Over Fuller
          Fuller argues that specific or general jurisdiction over him is unconstitutional, 
and any actions taken by him are protected by the “fiduciary shield” doctrine.
          1. Due Process Argument
          Fuller contends that appellees have attempted to “bootstrap” the personal
jurisdiction Texas courts might have over Capital and impute it to him. He points us
to Siskind v. Villa Foundation for Education, Inc. for the proposition that attempting
to satisfy the minimum contacts in this way runs afoul of due process concerns. 642
S.W.2d 434 (Tex. 1982). The Siskind Court refused to find jurisdiction over the non-resident employees of a school that, inter alia, advertised its programs in Texas and
mailed informational packets into Texas because 
absent some allegation of a specific act in Texas, or one with reasonable
foreseeable consequences within state’s borders, a nonresident employee
of a foreign corporation cannot be sued in Texas simply because his or
her employer solicits business in Texas. 

Siskind, 642 S.W.2d at 438 (quoting Rush v. Savchuk, 444 U.S. 320, 331-32, 100 S.
Ct. 571, 579 (1980) (but noting that specific personal jurisdiction attached as to
school).
          However, in appellee’s response to Fuller’s special appearance, it is clear that
Fuller performed acts of his own volition in Texas. See Stein v. Deason, 165 S.W.3d
406, 413 (Tex. App.—Dallas 2005, no pet. h.) (holding that courts must also
consider jurisdictional facts alleged in response to special appearance in addition to
live petition). It is uncontroverted that Fuller personally traveled to Texas to assess
the property that is at the heart of this controversy. Again, it is the quality and nature
of the defendant’s contacts, rather than their number, that is important to the
minimum contacts analysis. Guardian, 815 S.W.2d at 230 n.11. Therefore, 
Siskind’s reasoning is not applicable to the instant facts, and no unconstitutional
bootstrapping occurred.
          2. Fiduciary Shield Doctrine
          Fuller also argues that the fiduciary shield doctrine protects him from personal
jurisdiction. This doctrine holds that an employee of a company is protected from
personal jurisdiction when the employee’s actions have been on behalf of his
employer. Garner v. Furmanite Australia Pty., Ltd., 966 S.W.2d 798, 803 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied). However, Texas courts applying the
“fiduciary shield doctrine have expressly limited its application to attempts to
exercise general jurisdiction over a nonresident defendant.” See, e.g., Wright v. Sage
Eng’g, Inc., 137 S.W.3d 238, 250 (Tex. App.—Houston [1st Dist.] 2004 pet.
denied); SITQ E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638 (Tex. App.—Fort
Worth 2003, pet. denied). The fiduciary shield doctrine does not protect a corporate
officer from specific personal jurisdiction as to intentional torts or fraudulent acts for
which he may be individually liable. Wright, 137 S.W.3d at 250; see also Gen. Elec.
Co. v. Brown & Ross Int’l Distribs., Inc., 804 S.W.2d 527, 532-33 (Tex.
App.—Houston [1st Dist.] 1990, writ denied) (holding that corporate officers who
had, inter alia, made misrepresentations to customers were subject to personal
jurisdiction in Texas). It is well settled that a corporate agent can be held
individually liable for fraudulent statements or knowing misrepresentations even
when the agent makes them in the capacity of a corporate representative. Wright,
137 S.W.3d at 250. 
          It “is ‘the defendant’s conduct and connection with the forum’ that are
critical.” Michiana Easy Livin’ Country, 168 S.W.3d at 389 (citing Burger King, 471
U.S. at 474, 105 S. Ct. at 2176 (1985)). To determine such, we need only ascertain
whether there is “more than a scintilla” of evidence to support the trial court’s
finding that Fuller performed individual acts that allow for specific jurisdiction. 
BMC Software, 83 S.W.3d at 795, 796. Appellees’ evidence satisfies this burden. 
Again, it is uncontroverted that Fuller personally traveled to Texas to assess the
property and that he prepared relevant tax and business information regarding the
Garden Ridge property that is at the heart of this litigation. We hold that, as to
Fuller, specific personal jurisdiction lies. Further, because we hold that Texas courts
have specific personal jurisdiction over Fuller, we need not reach Fuller’s alternative
challenge to general personal jurisdiction. Wright, 137 S.W.3d at 251, n.11.
          We overrule Fuller’s sole issue.
 
CONCLUSION
          The decision of the trial court is affirmed in all respects.
 
                                                                        Sam Nuchia
                                                                        Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.