TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00368-CV






Jos Santy, Willie Van Runxt and Christian Wanner, (1) Appellants



v.



Ralph McElroy; Ralph McElroy Co., Inc.; Ralph McElroy Consulting, Inc.; Bruce Farmer;


Helen Farmer; et al., Individually and on Behalf of All The Limited Partners of Hot


Corners, Ltd., et al. and on Behalf of Those Limited Partnerships, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 97-07873, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






 Jos Santy and Willie Van Runxt, both residents and citizens of Belgium, bring this
interlocutory appeal from the district court's order overruling their objections to personal
jurisdiction. See Tex. R. Civ. P. 120a; Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West
Supp. 2001). In the underlying lawsuit Santy and Van Runxt are two of many defendants (2) allegedly
associated with sales of Texas real estate to partnerships of which the McElroy appellees were
limited partners. (3) In the lawsuit, the McElroy appellees claim that the defendants, including Santy
and Van Runxt, engaged in a conspiracy that involved the unlawful sale of securities and that they
concealed the nature of the Texas real estate sales in a manner that constituted fraud. More
specifically, the McElroy appellees claim that Santy and Van Runxt engaged in fraud, conspiracy,
aiding and abetting a breach of fiduciary duty and violated the Texas Securities Act. (4) Raising three
issues, Santy and Van Runxt contend that Texas courts do not have general or specific personal
jurisdiction over them and that the district court's order offends traditional notions of fair play and
substantial justice. We will affirm the district court's order overruling their objections to personal
jurisdiction.


Background


 The McElroy appellees alleged in their fifth amended petition that certain partnerships
formed during the late 1980s and the 1990s had as their general partner William B. Pohl or entities
and persons associated with him. We will refer to these partnerships as the "Pohl partnerships." The
McElroy appellees are some of the limited partners that invested in the Pohl partnerships after being
told by the defendants that these partnerships had an opportunity to purchase various tracts of prime
Texas real estate. (5) Several of the Pohl partnerships are also appellees. The defendants represented
to the McElroy appellees that the real estate purchases would provide excellent investment
opportunities. The McElroy appellees alleged that what the defendants did not tell them was that
some of the property in each transaction had been "flipped"--the original owner sold property to
Madron Investments, Ltd., or another Pohl-related person or entity, that would in turn resell the
property to a Pohl partnership at a substantial markup. The McElroy appellees alleged that large
profits from these flipped sales to the Pohl partnerships would then be distributed to defendant
F.F.U., Limited, yet another Pohl-controlled entity. The McElroy plaintiffs alleged that F.F.U. would
then distribute most or all of the profits from the real estate sales as commissions to various
defendants, including Santy and Van Runxt, as compensation for recruiting limited partners for the
Pohl partnerships. The McElroy appellees contended that the defendants never revealed the large
profits many of them received as a result of the flipped sales from Madron Investments and other
Pohl entities to the Pohl partnerships.

 The crux of the McElroy appellees' claims against Santy and Van Runxt is that the
two men knew of this scheme of flipping properties and the marked-up price charged the Pohl
partnerships, participated in the scheme by soliciting investors, assisted in making the scheme
possible by providing capital to enable the Texas real estate purchases to proceed at inflated prices,
and personally profited from the flips and markups. The McElroy appellees alleged that Santy and
Van Runxt engaged in several overt acts in Texas, including traveling from Belgium to inspect the
Texas properties and to assist the defendants in formulating plans for the flip scheme. The McElroy
appellees alleged that Santy and Van Runxt conspired with the defendants in this scheme knowing
that the real estate was in Texas and that Texas investors were being solicited for the Pohl
partnerships.

 The McElroy appellees alleged that the district court had specific personal jurisdiction
over Santy and Van Runxt because the causes of action alleged against them arose from or were
related to their contacts with Texas. Additionally, the McElroy appellees alleged that the district
court had general personal jurisdiction over Santy and Van Runxt because their contacts with Texas
are continuing and systematic. In response to the lawsuit, Santy and Van Runxt filed special
appearances contending that Texas courts did not have specific or general jurisdiction over them.
After a hearing, the district court denied both special appearance motions.


Discussion


 In three issues, Santy and Van Runxt contest the district court's decision that they are
subject to the jurisdiction of Texas courts. A Texas court may exercise jurisdiction over a
nonresident defendant if the Texas long-arm statute authorizes the exercise of jurisdiction and the
exercise of jurisdiction comports with due process. Daimler-Benz Aktiengesellschaft v. Olson, 21
S.W.3d 707, 714 (Tex. App.--Austin 2000, pet. dism'd w.o.j.) (citing Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991)); see Tex. Civ.
Prac. & Rem. Code Ann. § 17.042 (West 1997). The broad language of the long-arm statute permits
an expansive reach, limited only by the federal constitutional requirements of due process. 
Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). As a result, we consider only whether
it is consistent with federal due process for Texas courts to assert personal jurisdiction over Santy
and Van Runxt. Guardian Royal, 815 S.W.2d at 226.

 The federal due process clause protects a person's liberty interest in not being subject
to binding judgments of a forum with which that person has established no meaningful contacts, ties,
or relations. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (citing International
Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). Under the federal constitutional test of due
process, a state may assert personal jurisdiction over a nonresident defendant only if the defendant
has purposefully established minimum contacts with the forum state and the exercise of jurisdiction
comports with traditional notions of fair play and substantial justice. Id. at 476.

 The ultimate test of minimum contacts is whether Santy and Van Runxt purposefully
availed themselves of the privilege of conducting activities in Texas, thereby invoking the benefit
and protection of Texas laws. Schlobohm, 784 S.W.2d at 357-58. This requirement ensures that a
nonresident defendant will be haled into court only as a result of intentional activities, so that it is
reasonable for the nonresident defendant to expect the call of a Texas court. Guardian Royal, 815
S.W.2d at 226; Schlobohm, 784 S.W.2d at 357-58. 

 The minimum contacts analysis has been refined into two types of jurisdiction
--specific and general. Specific jurisdiction exists when the cause of action arises out of or relates
to the nonresident defendant's contacts with the forum state. Guardian Royal, 815 S.W.2d at 230. 
The defendant's activities must have been purposefully directed toward the forum state. Id. at 228. 
Under specific jurisdiction, the minimum contacts analysis focuses on the relationship among the
defendant, the forum, and the litigation. Id.

 General jurisdiction exists when the defendant's contacts with the forum state are
continuous and systematic, even if the cause of action does not arise from or relate to activities
conducted within Texas. Id. For general jurisdiction, the minimum contacts analysis is more
demanding, requiring a showing of substantial activities within the forum state. Schlobohm, 784
S.W.2d at 357.

 The existence of personal jurisdiction is a question of law, but proper exercise of that
jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. We
determine the appropriateness of the trial court's resolution of those disputes by an ordinary
sufficiency of the evidence review based on the entire record. Daimler-Benz, 21 S.W.3d at 715
(citing Conner v. ContiCarriers & Terminals, Inc., 944 S.W.2d 405, 411 (Tex. App.--Houston [14th
Dist.] 1997, no writ)). If the trial court's order is based on undisputed or otherwise established facts,
we conduct a de novo review of the order. Id. A defendant who challenges a court's exercise of
personal jurisdiction through a special appearance carries the burden of negating all bases for
personal jurisdiction. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Siskind
v. Villa Found. for Educ., Inc., 642 S.W.2d 434, 438 (Tex. 1982); Nikolai v. Strate, 922 S.W.2d 229,
236 (Tex. App.--Fort Worth 1996, writ denied); Hayes v. Wissel, 882 S.W.2d 97, 99 (Tex.
App.--Fort Worth 1994, no writ).

 When a trial court overrules a special appearance, the defendant should request
findings of fact under Texas Rule of Civil Procedure 296. Runnells v. Firestone, 746 S.W.2d 845,
849 (Tex. App.--Houston [14th Dist.]), writ denied per curiam, 760 S.W.2d 240 (Tex. 1988). 
Because the district court made no findings in this case, all facts necessary to support the order are
implied. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In re W.E.R., 669 S.W.2d 716,
716-17 (Tex. 1984); Runnells, 746 S.W.2d at 848. When a complete reporter's record exists as in
this case, these implied findings, however, are not conclusive and an appellant may challenge the
sufficiency of the evidence to support them. Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex.
1989). When such points are raised, the standard of review to be applied is the same as that applied
in the review of jury findings or a trial court's findings of fact. Id.

 Thus, we will set aside a finding of the district court only if the finding is so against
the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); Runnells, 746 S.W.2d at 849. In reviewing such
a point of error, we must consider and weigh all of the evidence, both the evidence that tends to
prove the existence of a vital fact as well as the evidence that tends to disprove its existence. Ames
v. Ames, 776 S.W.2d 154, 158-59 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). So
considering the evidence, if a finding is so contrary to the great weight and preponderance of the
evidence as to be manifestly unjust, the finding should be set aside, regardless of whether some
evidence supports it. Watson v. Prewitt, 320 S.W.2d 815, 816 (Tex. 1959); King's Estate, 244
S.W.2d at 661.

 If evidence supports the implied findings of fact, we must uphold the district court's
order on any legal theory supported by the findings. Worford, 801 S.W.2d at 109; Point Lookout
West, Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987); Runnells, 746 S.W.2d at 848. This is so
regardless of whether the trial court articulates the correct legal reason for the order. Harrington v.
Railroad Comm'n, 375 S.W.2d 892, 895 (Tex. 1964); Fish v. Tandy Corp., 948 S.W.2d 886, 891-92
(Tex. App.--Fort Worth 1997, pet. denied); Marifarms Oil & Gas, Inc. v. Westhoff, 802 S.W.2d 123,
125 (Tex. App.--Fort Worth 1991, no writ). We review the legal conclusions supporting the order
to determine whether they are correct as a matter of law. Lawrence v. Kohl, 853 S.W.2d 697, 699
(Tex. App.--Houston [1st Dist.] 1993, no writ).

 In deciding a special appearance motion, the court shall consider the pleadings, any
stipulations made by and between the parties, such affidavits and attachments as may be filed by the
parties, the results of discovery processes, and any oral testimony presented at the hearing. Tex. R.
Civ. P. 120a(3). Here, the parties had conducted discovery and each side had raised several
objections before the district court held the hearing on the special appearance motions. In its order,
the district court, in addition to denying the special appearance motions, ruled on many of the
parties' discovery objections. In determining whether sufficient evidence supports the district court's
denial of the special appearance motions, we consider only the pleadings, the special appearance
motions and the response along with the attached exhibits, testimony at the hearing, affidavits filed,
and portions of discovery that were not excluded by the district court's sustaining of an objection.


Minimum Contacts--Specific Jurisdiction

 In their second issue, Santy and Van Runxt contend that there is insufficient evidence
to support the district court's implied finding of specific personal jurisdiction. We consider whether
the district court's implied finding is so against the great weight and preponderance of the evidence
as to be unjust.

 Before the district court could assume specific personal jurisdiction over Santy and
Van Runxt, it had to determine whether they purposefully did some act in Texas and whether the
controversy arose out of those acts. See Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 663
(Tex. 1987); General Elec. Co. v. Brown & Ross Int'l, 804 S.W.2d 527, 532 (Tex. App.--Houston
[1st Dist.] 1990, writ denied) (citing Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408,
415-16 (1984)).

 According to Santy's affidavit, he is an attorney representing European investors in
multiple Texas real estate transactions marketed by Bill Pohl. Van Runxt also states by affidavit that
he represents European investors in the Texas real estate transactions at issue. Santy and Van Runxt
were responsible for soliciting limited partners in Europe to join Texas limited partnerships related
to Texas real estate transactions offered by Bill Pohl and the other defendants. Both Santy and Van
Runxt state that they have traveled to Texas numerous times but only on behalf of the foreign
investors, their clients, to view the different properties at issue. Santy states that he traveled to Texas
approximately nineteen times between October 1995 and June 1998 to view properties related to the
limited partnerships but that he made these trips only in a representative capacity on behalf of foreign
investors. Van Runxt also traveled to Austin at least twice to discuss his interest in one of the Pohl 
partnerships. McElroy testified at the hearing that he and Van Runxt had discussed, in Texas, Van
Runxt's interest in one of the Pohl partnerships. McElroy also testified that he and Santy had
discussed, in Texas, Santy's interest in the partnerships. McElroy testified that Santy and Van Runxt
both told him they had been involved with Pohl in the eighties and made money then and they were
sure they would again make money with these partnerships. McElroy stated that during these
discussions, neither Santy nor Van Runxt ever told him they were in Texas only as representatives
of their European clients. McElroy said that the two referred to their own interests in the
partnerships.

 The evidence shows that Santy received what he characterized as "finder's fees" and
commissions in connection with these Texas real estate transactions and that he discussed these
commissions in correspondence with other defendants. In some of his correspondence, he refers to
"my [bank] account in Austin." Records show that Santy received commissions of nearly $1 million
in 1995 from F.F.U. and Madron Investments that can be traced to the purchase and sale of real
estate in Texas. Santy is listed as a vice-president on the letterhead of the Texas corporation Pohl,
Brown & Associates, Inc. ("PBA") and has received expense reimbursements from PBA. Both
Santy and Van Runxt corresponded with co-defendants Pohl, Michael Hess, and PBA regarding
these specific Texas real estate transactions. When a party expects to profit from its activities in
Texas and receives a benefit from Texas residents and Texas law, that party can reasonably assume
that a Texas court might call. General Elec. Co., 804 S.W.2d at 531.

 The claims against Santy and Van Runxt relate directly to their ties with Texas. They
had significant purposeful contacts with Texas related directly to the McElroy appellees' claims. 
Santy and Van Runxt claim that they are not subject to jurisdiction because they never solicited
investments from any of the Texas McElroy appellees. However, their participation in the scheme,
including contacts with PBA and trips to Texas, establishes the jurisdiction of a Texas court.
Moreover, the Texas Securities Act provides that every person who is a "link in the chain" of the
wrongful sale of securities faces "aider" liability. (6) Tex. Rev. Civ. Stat. Ann. art. 581-33(F)(2) (West
Supp. 2001); Rio Grande Oil Co. v. State, 539 S.W.2d 917, 922 (Tex. Civ. App.--Houston [14th
Dist.] 1976, writ ref'd n.r.e.). Finally, participation in a project that aims to extract profit from Texas
real estate, such as that alleged here, will support specific jurisdiction. See Texas Commerce Bank
v. Interpol '80 Ltd., 703 S.W.2d 765, 771-72 (Tex. App.--Corpus Christi 1985, no writ).

 Although disputed by Santy and Van Runxt, evidence in the record establishes that
over a period of years, Santy and Van Runxt maintained ties with Texas in various manners
regarding these Texas real estate transactions, expecting to profit from the sales. Evidence exists
showing that Santy and Van Runxt had been involved with the other Texas defendants planning
these sales, had visited Texas to see the properties numerous times, and had discussed the
partnerships with McElroy. The district court's implied finding of specific personal jurisdiction was
not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. 
Santy's and Van Runxt's second issue is overruled.

 Because we determine that the district court's implied finding of specific personal
jurisdiction is supported by the evidence, it is unnecessary for us to address Santy's and Van Runxt's
issue disputing general jurisdiction.


Fair Play and Substantial Justice

 Having determined that the district court's exercise of personal jurisdiction withstands
a minimum contacts analysis, we next determine whether this exercise of jurisdiction comports with
fair play and substantial justice. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113
(1987); Guardian Royal Exch., 815 S.W.2d at 231; Transportacion Especial Autorizada v. Seguros
Comercial America, 978 S.W.2d 716, 721 (Tex. App.--Austin 1998, no pet.). Once minimum
contacts are established, those contacts must be evaluated in light of other factors to determine
whether the exercise of personal jurisdiction comports with fair play and substantial justice. Asahi
Metal Indus., 480 U.S. at 113-15; Transportacion Especial, 978 S.W.2d at 721. Those factors are:


(1) the burden on defendant; (2) the interests of the forum state in adjudicating the
dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the
interstate judicial system's interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the several states in furthering
fundamental substantive social policies.



Guardian Royal, 815 S.W.2d at 231. "Because the minimum contacts analysis now encompasses
so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail
a fair play analysis." Schlobohm, 784 S.W.2d at 357-58. A defendant claiming that jurisdiction is
improper under this standard "must present a compelling case that the presence of some other
considerations would render jurisdiction unreasonable." Guardian Royal Exch., 815 S.W.2d at 231. 
 While the fourth and fifth factors are not at issue in this case, Santy and Van Runxt
reiterate the arguments they raised in their other issues and suggest that these arguments also show
that the exercise of jurisdiction fails a fair play test. Santy and Van Runxt have not presented a
compelling case that other considerations render jurisdiction unreasonable. We hold that the district
court's exercise of jurisdiction did not offend the traditional notions of fair play and substantial
justice. Santy's and Van Runxt's third issue is overruled.


Conclusion


 We affirm the district court's order overruling Santy's and Van Runxt's special
appearance motions. 



 ___________________________________________

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: July 26, 2001

Do Not Publish

1.   Although Christian Wanner filed a notice of appeal, the Court has been notified that he will not
be filing an appellant's brief. We hold that Wanner has waived his right to raise any appellate issues
related to his special appearance motion. The district court's order overruling his objections to
personal jurisdiction is affirmed.
2.   The defendants in the underlying lawsuit include the following parties: William B. Pohl; Pohl,
Brown and Associates, Inc.; Rebecca Kisner; Michael Hess; Charles House; Gary F. Brown; J.
Winston Chapman, Jr.; Rash, Chapman, Schreiber & Porter, L.L.P.; Christian Wanner; Jos Santy;
Willie Van Runxt; Nathalie Pappas; Daniel Bechu; Denis Bremond; Henk Morelisse, Jr.; Henk
Morelisse, Sr.; Rohemi Investments Partnership (a/k/a Rohemi, Ltd.); Madron Investments, Ltd.; and
F.F.U., Limited.
3.   The McElroy appellees include the following parties: Ralph McElroy; Ralph McElroy Co.,
Inc.; Ralph McElroy Consulting, Inc.; Bruce Farmer; Helen Farmer; Sally Anne Farmer; Ray and
Sylvia Immell; Chu Cheng; Shelly Priebe; Lora Stoppel; Randy Connell; Chuck Clinton; Marie
Clinton; James A. Albright; and Larry D. Albright, individually and on behalf of all the Limited
Partners of Hot Corners, Ltd.; Property Fund II, Ltd.; Par 620, Ltd.; Tony, Ltd.; Brooke, Ltd.; Melisa,
Ltd.; Carolville, Ltd.; T.S.S.D., Ltd.; T.S.S.D. II, Ltd.;Terriville II, Ltd.; Romain, Ltd; Helen, Ltd.;
ZFB, Ltd.; Michelle, Ltd.; Dominique, Ltd.; and Tylerville, Ltd.; and on behalf of those Limited
Partnerships.
4.   Specifically, the McElroy appellees alleged that Santy and Van Runxt violated article 581-33(F)(2) of the Texas Securities Act. See Tex. Rev. Civ. Stat. Ann. art. 581-33(F)(2) (West Supp.
2001) (liability of control persons and aiders). 
5.   The land at issue is unimproved real estate in Travis and Williamson counties within a radius
of a few miles from Lakeline Mall at the intersection of U.S. Highway 183 and R.M. 620. 
6.   The term "security" includes any limited partner interest in a limited partnership. Tex. Rev.
Civ. Stat. Ann. art. 581-4(A) (West Supp. 2001). 


(1) the burden on defendant; (2) the interests of the forum state in adjudicating the
dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the
interstate judicial system's interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the several states in furthering
fundamental substantive social policies.



Guardian Royal, 815 S.W.2d at 231. "Because the minimum contacts analysis now encompasses
so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail
a fair play analysis." Schlobohm, 784 S.W.2d at 357-58. A defendant claiming that jurisdiction is
improper under this standard "must present a compelling case that the presence of some othe