Jerome HAYES, Appellant,

v.

Eudean WISSEL and A.O. Orjias, Appellees.

No. 2–93–230–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 17, 1994.

Henry, Hatcher & Schiller, P.C. and L. Kip Schiller, Gainesville, for appellant.

Belvin R. Harris, Gainesville, for appellees.

Before FARRIS, LATTIMORE and DAY, JJ.

OPINION

DAY, Justice.

Jerome Hayes appeals from the trial court's order sustaining Eudean Wissel and A.O. Orjias' (appellees) objections to personal jurisdiction. We affirm.

Wissel, a resident of Colorado, placed an advertisement in TRADE-A-PLANE magazine, offering for sale a 1946 Taylorcraft BC12D, 85 horsepower airplane that had been through a 1990 restoration. TRADE-A-PLANE is published in Crossville, Tennessee and enjoys international circulation, including throughout Texas. Hayes read Wissel's advertisement in a September 1992 issue of TRADE-A-PLANE, which was delivered to Hayes' Cooke County residence.

In response to the advertisement, Hayes placed a telephone call from his home to Wissel in Colorado. During the conversa-

tion, Wissel represented to Hayes that the airplane was "top-notch" with a very good engine, in "perfect" shape, completely restored, in full compliance with FAA regulations, airworthy, and legal to fly. Wissel also invited Hayes to contact Orjias, the mechanic who had inspected the plane after its restoration, for confirmation of Wissel's representations. Hayes telephoned Orjias, also a Colorado resident, who told Hayes the airplane was a very good plane and the nicest that Orjias had seen.

Based on appellees' representations about the condition of the airplane, Hayes decided to purchase it and sent Wissel a $500 deposit. Thereafter, Hayes made two more telephone calls to Wissel. Wissel made most of his representations during the first telephone call, but he mentioned during the subsequent calls that the plane was a good one.

On October 5, 1992, Hayes flew to Colorado to pick up the airplane. When he arrived, he inspected the aircraft's engine logbook, which reflected that it had undergone an annual inspection on October 1, 1992. The logbook also showed that Orjias had signed off on the annual inspection. There were no notations in the logbook that indicated anything was wrong with the airplane. Hayes relied on the logbook in taking possession of the plane. Although invited to do so, Hayes did not test-fly the plane.

Hayes paid Wissel the balance of the purchase price and flew the airplane back to Texas. During the flight, the airplane used much more oil than Hayes believed it should have. In addition, gas leaked from the right wing tank and soaked the plane's headliner.

Upon arriving in Texas, Hayes and an FAA-approved inspector inspected the airplane and determined that appellees had misrepresented the plane's airworthiness. As a result of those alleged misrepresentations, Hayes sued appellees under the Texas Deceptive Trade Practices Act for cancellation and rescission.

Appellees filed a special appearance in which they asserted Texas courts have no personal jurisdiction over them. TEX. R.CIV.P. 120a. After a hearing, the trial court sustained appellees' objections to jurisdiction and dismissed the cause. Hayes appeals from that ruling.

■ The record shows that Orjias had no contacts with Texas at all. In fact, he spoke with Hayes only once—during a telephone call initiated by Hayes—before Hayes flew to Colorado. Wissel's lone advertisement in an international magazine cannot be imputed to Orjias in an effort to render him amenable to suit in Texas. *Siskind v. Villa Found. for Ed., Inc.,* 642 S.W.2d 434, 437 (Tex.1982).

■ Wissel's only contact with Texas was the ad that Hayes read in TRADE-A-PLANE magazine. Wissel had no place of business in Texas, did not advertise in any local or state publications, and sent nothing through the mail to Hayes. Consequently, Texas courts have no general jurisdiction over Wissel, and the trial court was required to determine whether it had specific jurisdiction over him. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990).

The Texas Supreme Court has formulated the following test for determining specific jurisdiction over nonresidents:

(1) the nonresident defendant must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, the act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded to the respective parties, and the basic equities of the situation.

*O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966). The first part of this formula reflects the key component of the minimum contacts analysis, the requirement that a defendant purposefully avail himself of the benefits of the forum and reasonably expect to be called to court there. *Guardian Royal Exch. v. English China Clays,* 815 S.W.2d 223, 227 (Tex.1991); *Schlobohm,* 784 S.W.2d at 358.

■ Our supreme court has rejected the mechanical application of this formula, using it instead as a jurisdictional checklist. *Schlobohm*, 784 S.W.2d at 358. Consequently, when specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 227. The burden of proof is on the defendant to show that he is not subject to the forum's jurisdiction. *C.W. Brown Machine Shop, Inc. v. Stanley Machinery Corp.*, 670 S.W.2d 791, 793 (Tex. App.—Fort Worth 1984, no writ).

With these principles in mind, we note that this court has previously decided the question presented here adversely to Hayes' position.

■ The facts in *C.W. Brown* are virtually identical to those in this case. C.W. Brown Machine Shop was a Texas Corporation, and Stanley Machinery was a foreign corporation chartered in Massachusetts. Stanley's only place of business was in Massachusetts. It had no registered agent in Texas, no employees in Texas, and had never entered into a joint venture in Texas. *Id.* at 792. Stanley was in the business of buying and selling used machinery and advertised in two national magazines, both of which were published in New Jersey. Stanley had no direct mail contact with Texas, and had not used local, regional, or state advertising media to sell its product. *Id.*

In June 1981, after reading an ad in one of the magazines, Brown contacted Stanley by telephone in Massachusetts concerning a machine. Brown inquired as to the machine's condition and requested pictures of it, which were part of the record on appeal. Brown went to Massachusetts and inspected and tested the machine in Stanley's warehouse. Brown then purchased the machine for $60,000 in "as is" condition. Stanley paid freight charges for shipment to Texas, and a Texas bank wired the purchase price to Stanley in Massachusetts. *Id.*

When the machine was shipped to Brown, its table was discovered to be frozen, and Brown had to have the machine repaired. Brown later filed suit, alleging misrepresentation, breach of warranty, negligence, and a violation of the Texas Deceptive Trade Practices Act. *Id.* After Stanley was served with process, it entered a special appearance pursuant to Tex.R.Civ.P. 120a, objecting to the trial court's jurisdiction on the ground that Stanley was not amenable to process in Texas. After a hearing, the trial court dismissed the cause of action for want of jurisdiction. *Id.* at 793.

This court affirmed the trial court's decision, holding that the mere fact that Stanley advertised in national publications was insufficient to satisfy the minimum contacts requirement of due process. *Id.* Specifically, this court held the evidence sufficient to establish that Stanley was not doing business in Texas and did not consummate the complained-of transaction in Texas, that the cause of action did not arise from some act or transaction in Texas, and that the assumption of jurisdiction over Stanley would offend traditional notions of fair play and substantial justice. *Id.* at 793–94; *see also Laykin v. McFall*, 830 S.W.2d 266, 269 (Tex.App.—Amarillo 1992, no writ) (nonresident defendant's oral agreement to send either the proceeds from sale of a ring or the ring itself back to Texas, coupled with two letters and two telephone calls to Texas, did not amount to the required purposeful invocation of the benefits and protections of Texas law); *Hoppenfeld v. Crook*, 498 S.W.2d 52, 57–58 (Tex. Civ.App.—Austin 1973, writ ref'd n.r.e.) (statements made in New York, coupled with letter mailed to Texas, are insufficient to support jurisdiction over New York resident, especially where nonresident defendant did not personally solicit plaintiff's business).

Likewise, in the instant case, appellees' evidence shows: (1) neither of them purposefully committed an action or consummated a transaction in Texas; (2) the cause of action did not arise from an act or transaction in Texas; and (3) the assumption of jurisdiction over either of the appellees would offend traditional notions of fair play and substantial justice. *O'Brien*, 399 S.W.2d at 342.

Hayes' cases are distinguishable from his situation. The court in *Portland Svgs. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532 (Tex.App.—Corpus Christi 1985, writ ref'd

n.r.e.), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986), held that Bernstein had consented to the trial court's jurisdiction by filing a motion for sanctions *before* its special appearance. *Id.* at 535. Even though this ruling was dispositive of the case, the court went on to conclude that Portland Savings' cause of action arose from Bernstein's purposeful acts in Texas: telephone calls, letters, and visits to Texas. *Id.* at 534, 536–37.

In *Arterbury v. American Bank & Trust Co.,* 553 S.W.2d 943 (Tex.Civ.App.—Texarkana 1977, no writ), Arterbury, a Texas resident, became delinquent in his car payments to American Bank & Trust, a Louisiana bank. American Bank, by written agreement, hired a Texas bank as its agent to collect the note and repossess the automobile. An employee of the Texas bank went to Arterbury's home, insisted that Arterbury's wife give him the car keys, and took possession of the automobile on behalf of American Bank. *Id.* at 945. The Texarkana court held that American Bank, through its agent, purposefully engaged in conduct in Texas and enjoyed the benefit and protection of Texas laws. As a result, the exercise of a Texas court's jurisdiction over American Bank would not offend due process. *Id.* at 948–49.

In *Read v. Cary,* 615 S.W.2d 296 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.), Cary was originally employed by Read in Texas, he initiated communications with Read in Texas by letter and by phone, and Read relied on Cary's representations in Texas. *Id.* at 298–300. The Dallas court held Cary was amenable to process in Texas based on a continuing course of conduct in Texas and continuing contacts with Texas. *Id.* at 299.

Hayes also relies on *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233 (Col.1992) and *Rose v. Franchetti,* 713 F.Supp. 1203 (N.D.Ill.1989), *aff'd,* 979 F.2d 81 (7th Cir. 1992). Not being from Texas, these cases have no precedential value in this state. In addition, we are unpersuaded by them because they are factually distinguishable from Hayes' situation. The nonresident defendants in both of these cases advertised their respective goods in a magazine or newspaper that circulated to the plaintiffs' states. Both nonresident defendants also made telephone calls to the potential purchasers in their respective states. *Classic Auto Sales,* 832 P.2d at 234; *Rose,* 713 F.Supp. at 1205 & n. 1, 1207. Neither of the appellees in this case made any telephone calls to Hayes.

Because appellees are not amenable to suit in Texas, the trial court properly dismissed Hayes' cause of action. We sustain appellees' point of error.

The trial court's judgment is affirmed.