TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00480-CV






Mickey Stowers d/b/a Stowers Air Craft and Aircraft Structures, Inc., Appellants



v.



Leon Roberts, Individually, and as Independent Administrator of the Estate of


Kevin Phillip Roberts, Deceased, and Patricia Roberts, Appellees






FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 72,302A, HONORABLE GUY HERMAN, JUDGE PRESIDING






 This is an interlocutory, accelerated appeal from the trial court's denial of special
appearances. Mickey Stowers d/b/a Stowers Air Craft, an Oklahoma resident and sole
proprietorship, and Aircraft Structures, Inc., an Oklahoma corporation, appeal following the trial
court's denial of their special appearances. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7)
(West Supp. 2002); Tex. R. Civ. P. 120a. The sole appellate issue is whether Texas courts can assert
personal jurisdiction over the nonresident appellants. We reverse the trial court's order denying the
special appearances.


Background


 In April 1999, Kevin Roberts died when the Cessna airplane he was flying crashed
in Oklahoma. Leon and Patricia Roberts, Kevin's parents, in conjunction with probating Kevin's
estate, filed a wrongful death action and alleged strict product liability claims and various negligence
claims against all prior owners of the airplane as well as all entities they were aware of that
performed repairs on the airplane. Mickey Stowers d/b/a Stowers Air Craft was among the
defendants that had previously owned the airplane and had performed repairs on it. Aircraft
Structures, Inc., an Oklahoma corporation created in 1991 by Mickey Stowers, was also named as
a defendant in the suit.

 The appellants filed special appearances, arguing that their contacts with Texas did
not permit the trial court to exercise personal jurisdiction over them. Specifically, appellants
contended that they were not subject to the jurisdiction of Texas courts because they have not had
sufficient minimum contacts with Texas. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (citing International Shoe Co. v. Washington, 326 U.S. 310 (1947)). Additionally, they
contended that the trial court's order offended the traditional notions of fair play and substantial
justice. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987).

 Mickey Stowers filed an affidavit supporting both parties' special appearances.
According to his affidavit, since 1978, he has been in the business of purchasing damaged aircraft,
repairing them and then reselling them. In 1982, Stowers d/b/a Stowers Air Craft purchased the
Cessna airplane at issue from someplace other than Texas. At the time of purchase, the airplane was
damaged. Stowers repaired the plane and, in 1984, sold it to a buyer on the east coast. After selling
the plane, Stowers was unaware of the plane's whereabouts until nineteen years later when he was
named as a defendant in the underlying lawsuit. Stowers stated that his ownership, repair and sale
of the airplane did not involve any contacts with Texas. Further, he stated that neither he nor
Aircraft Structures, Inc. had any significant contacts with Texas.

 Later, during a deposition, Stowers stated that he visited Texas once in the last nine
years but only on behalf of Aircraft Structures, Inc. to purchase an airplane part in Dallas. 
Additionally, he stated that Aircraft Structures, Inc. had on five previous occasions performed
airplane repairs in Oklahoma for a single Texas corporate client within the year. He stated that
Aircraft Structures, Inc. placed advertisements in "Trade-A-Plane" magazine, a publication with a
national circulation that includes Texas. Since 1978, Stowers stated that he has sold as many as five
airplanes in one year and as few as zero planes in a year. He could not recall selling any airplanes
to Texas residents. Additionally, he stated that it is his standard business practice to destroy all
business records over two years old.

 Stowers then filed a second affidavit and acknowledged the contacts he referred to
in his deposition. Additionally, Stowers stated that it was "possible" that he may have done business
in Texas in 1982 through 1984 while he was a sole proprietor, but he could not recall anything. He
also stated that "he didn't think" he had sold any airplanes to Texas residents but then stated that he
had "sold a lot of a airplanes in [his] lifetime." He also stated that neither he, his family, nor his
company have property, bank accounts, or any other contacts with Texas.

 The Robertses responded to the special appearance and contended that Texas courts
could exercise personal jurisdiction over Stowers and Aircraft Structures, Inc. based on Stowers's
statements in his second affidavit and his deposition. Following a hearing, at which no additional
evidence was offered, the trial court denied appellants' special appearances. Additionally, the trial 
court declined the appellants' request to make findings of fact and conclusions of law. (1)


Discussion


Personal Jurisdiction

 A Texas court may exercise jurisdiction over a nonresident defendant if the Texas
long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction comports with
due process. Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d
223, 226 (Tex. 1991); see Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997). The broad
language of the Texas long-arm statute permits an expansive reach, limited only by the federal
constitutional requirements of due process. Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex.
1990). As a result, we consider only whether it is consistent with federal due process for Texas
courts to assert personal jurisdiction over Aircraft Structures, Inc. and Stowers. Guardian Royal,
815 S.W.2d at 226.

 The federal due process clause protects a person's liberty interest in not being subject
to binding judgments of a forum with which that person has established no meaningful contacts, ties,
or relations. Burger King Corp., 471 U.S. at 471-72 (citing International Shoe Co., 326 U.S. at 319). 
Under the federal constitutional test of due process, a state may assert personal jurisdiction over a
nonresident defendant only if the defendant has purposefully established minimum contacts with the
forum state and the exercise of jurisdiction comports with traditional notions of fair play and
substantial justice. Id. at 476; CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex 1996).


Minimum Contacts

 The test for minimum contacts is whether Stowers d/b/a Stowers Air Craft and
Aircraft Structures, Inc. purposefully availed themselves of the privilege of conducting activities in
Texas, thereby invoking the benefit and protection of Texas laws. See Schlobohm, 784 S.W.2d at
357-58. This requirement ensures that a nonresident defendant will be "haled" into court only as a
result of intentional activities, so that it is reasonable for the nonresident defendant to expect the call
of a Texas court. Guardian Royal, 815 S.W.2d at 226; Schlobohm, 784 S.W.2d at 357-58. 

 The minimum contacts analysis has been refined into two types of
jurisdiction--specific and general jurisdiction. Specific jurisdiction exists when the cause of action
arises out of or relates directly to the nonresident defendant's contacts with the forum state. 
Guardian Royal, 815 S.W.2d at 230. In such an instance, the defendant's specific activities must
have been purposefully directed toward the forum state. Id. at 228. Under specific jurisdiction, the
minimum contacts analysis focuses on the relationships among the defendant, the forum, and the
subject of the litigation. Id. Under the general jurisdiction analysis, when the cause of action does
not arise from or relate directly to activities conducted within the forum state, the defendant's
contacts with the forum state must be continuous and systematic. Id. Contacts with the forum state
that are random, fortuitous, or attenuated are insufficient to support jurisdiction. CSR, Ltd., 925
S.W.2d at 594. For general jurisdiction, the minimum contacts analysis is more demanding and
requires a showing of substantial activities within the forum state. Schlobohm, 784 S.W.2d at 357.

 The parties agree that appellants had no contacts or activities directed at Texas that
related to the airplane at issue and that appellants' contacts with Texas were not the type that would
support minimum contacts based on specific jurisdiction. Consequently, at issue is only whether
appellants' contacts and activities directed at Texas were the type that would support minimum
contacts based on general jurisdiction. The issue in this appeal, therefore, is not whether appellants
have had any contacts with Texas; rather, the issue is whether their contacts rise to a level of
continuous and systematic contacts sufficient to permit a Texas court to exercise general jurisdiction
over them. See Guardian Royal, 815 S.W.2d at 230.

 The inquiry for determining whether minimum contacts exist to establish general
jurisdiction "demands . . . that all contacts be carefully investigated, compiled, sorted, and analyzed
for proof of a pattern of continuing and systematic activity." Michel v. Rocket Eng'g Corp., 45
S.W.3d 658, 680 (Tex. App.--Fort Worth 2001, no pet.) (quoting Schlobohm, 784 S.W.2d at 359). 
The focus of our inquiry must be on the nature and quality of the defendant's contacts rather than
only on the sheer number of contacts. Id. (citing Guardian Royal, 815 S.W.2d at 230 n.11); see also
Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 413-14 (1984) (despite defendant's
many contacts with forum state, these contacts were inadequate to constitute continuing and
systematic contacts).


Challenging Personal Jurisdiction

 Defendants who challenge a court's exercise of personal jurisdiction through a special
appearance carry the burden of negating all bases for personal jurisdiction. Kawasaki Steel Corp.
v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Siskind v. Villa Found. for Educ., Inc., 642 S.W.2d
434, 438 (Tex. 1982); Nikolai v. Strate, 922 S.W.2d 229, 236 (Tex. App.--Fort Worth 1996, writ
denied); Hayes v. Wissel, 882 S.W.2d 97, 99 (Tex. App.--Fort Worth 1994, no writ). The court in
deciding a special appearance motion shall consider the pleadings, any stipulations made by and
between the parties, affidavits and attachments filed by the parties, the results of discovery processes,
and any oral testimony presented at the hearing. Tex. R. Civ. P. 120a(3). In challenging the trial 
court's exercise of personal jurisdiction over them, Stowers and Aircraft Structures, Inc. bore the
burden to prove that they did not have the necessary minimum contacts required to establish general
jurisdiction, that is, their activities directed toward and their contacts with Texas were not substantial
or of a continuous and systematic nature. 


Standard of Review

 The existence of personal jurisdiction is a question of law, but proper exercise of that
jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. We
determine the appropriateness of the trial court's resolution of any factual disputes by an ordinary
sufficiency of the evidence review based on the entire record. Conner v. ContiCarriers & Terminals,
Inc., 944 S.W.2d 405, 411 (Tex. App.--Houston [14th Dist.] 1997, no writ). If the trial court's order
is based on undisputed or otherwise established facts, we conduct a de novo review of the order. Id.

 In this instance, there are no disputed fact issues. Stowers's two affidavits and a
portion of his deposition provide the only evidence regarding personal jurisdiction and there is no
challenge to the evidence submitted. The parties simply disagree about whether, based on the
evidence submitted, the court could exercise general jurisdiction over the nonresident appellants. 
We will evaluate each appellant separately and determine whether either party successfully negated
general jurisdiction.


Aircraft Structures, Inc.

 Evidence of Aircraft Structures, Inc.'s activities and contacts with Texas include the
following: (1) Stowers traveled to Texas on behalf of Aircraft Structures, Inc. once within the last
nine years to purchase a part for an airplane unrelated to this litigation; (2) Aircraft Structures, Inc.
performed repair work in Oklahoma for an unrelated Texas company based in Dallas on five
occasions in the past year; and (3) Aircraft Structures, Inc. placed advertisements in "Trade-A-Plane"
magazine, a publication with a national circulation that includes Texas and did not advertise in any
other trade publications. Other than these contacts, Stowers stated that "Aircraft Structures, Inc. has
done no other business in the State of Texas" and has no "property, bank accounts or other contacts
in the State of Texas."

 The Robertses contend that these contacts are sufficient to establish general
jurisdiction while Aircraft Structures, Inc. contends they are not. In reviewing the trial court's
decision de novo, we must determine whether these activities and contacts, individually or when
considered as a whole, constitute "continuing and systematic" activities and contacts with Texas that
rose to the level of "substantial" contacts and created a business presence within Texas to support
general jurisdiction over Aircraft Structures, Inc. Michel, 45 S.W.3d at 672 (citing Fish v. Tandy
Corp., 948 S.W.2d 886, 891 (Tex. App.--Fort Worth 1997, writ denied); Hotel Partners v. Craig,
993 S.W.2d 116, 120 (Tex. App.--Dallas 1994, writ denied); Hotel Partners v. KPMG Peat
Marwick, 847 S.W.2d 630, 632 (Tex. App.--Dallas 1993, writ denied)).

 Routine sales and other profit-making activities in another state may subject a
corporation to general jurisdiction in that State. See World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297 (1980). The Robertses cite General Electric Company v. Brown & Ross International
Distributors, Inc., 804 S.W.2d 527, 530 (Tex. App.--Houston [14th Dist.] 1990, writ denied), and
argue that Aircraft Structures, Inc.'s Texas-client contact is sufficient for general jurisdiction. In
General Electric, the nonresident defendant, Brown & Ross, had twenty Texas customers and was
engaged in "substantial" sales of counterfeit General Electric parts in Texas. Additionally, after
Brown & Ross set up an agent in Texas, it changed its letterhead to reflect Houston as one of its
business locations. Id. at 531. Also, Brown & Ross's agent in Texas told many Texas companies
that Brown & Ross was distributing genuine General Electric parts. Id. at 532. The General Electric
court held that Brown & Ross had conducted substantial activities in Texas and its tortious acts--the
distribution of counterfeit General Electric parts and the subject of the lawsuit--were directly
targeted at Texas. Id.

 There is no allegation in the pleadings that Aircraft Structures, Inc. or its employees
during their employment committed any tortious acts in Texas. Stowers's one trip to Texas on
behalf of Aircraft Structures, Inc., along with five repairs for one Texas client performed in
Oklahoma, are in stark contrast to Brown & Ross's contacts and alleged deceptive activities targeted
directly at Texas. The acts of Aircraft Structures, Inc. in sending a representative to Texas to buy
an airplane part and having one client in Texas does not show that Aircraft Structures, Inc.
purposefully availed itself of the privileges of conducting business in Texas. See Schlobohm, 784
S.W.2d at 359. These acts do not exhibit continuous and systematic contacts necessary for general,
personal jurisdiction. See Helicopteros, 466 U.S. at 408; Reyes v. Marine Drilling Co., 944 S.W.2d
401, 404-05 (Tex. App.--Houston [14th Dist.] 1997, no writ) (Delaware corporation's purchase of
$183 million in goods from 471 Texas vendors, and selling $851,511.88 worth of material to Texas
companies were not continuous and systematic contacts that warranted general jurisdiction over
nonresident defendant); cf. World-Wide Volkswagen, 444 U.S. at 297.

 Moreover, the existence of a contract between a nonresident defendant and a Texas
party does not by itself establish personal jurisdiction over the nonresident. See TeleVentures, Inc.
v. International Game Tech., 12 S.W.3d 900, 909 (Tex. App.--Austin 2000, pet. denied). In
TeleVentures, the nonresident defendant executed letters of intent with the Texas plaintiff and had
numerous communications with entities in Texas, but these were not the type of continuous and
systematic contacts necessary for the court to exercise specific personal jurisdiction over the
nonresident defendant. Id. Consequently, it follows that Aircraft Structures, Inc.'s one customer for
whom the company performed five repairs in Oklahoma and made one trip to Texas to purchase a
part did not constitute continuous and systematic contacts for general jurisdiction.

 Finally, the Robertses contend that Aircraft Structures, Inc.'s advertisements in the
nationally circulated trade publication "Trade-A-Plane," which was sold in Texas, constituted
continuous and systematic contacts that established general jurisdiction. We disagree. Advertising
in national media, as contrasted with state or local publications directed specifically at Texas
residents, is not evidence of systematic and continuous activities purposefully directed at Texas to
establish general jurisdiction. See Michel, 45 S.W.3d at 673 (citing Hayes, 882 S.W.2d at 98). We
hold that Aircraft Structures, Inc.'s advertisements in the nationally circulated trade publication
Trade-A-Plane was not an activity purposefully directed at Texas.

 Considering all of Aircraft Structures, Inc.'s activities and contacts with Texas in light
of the well-established principles for invoking general jurisdiction, we hold that Aircraft Structures,
Inc. negated the bases for general jurisdiction by establishing that its contacts with Texas were
neither continuous and systematic nor substantial as required for the trial court to exercise personal
jurisdiction.


Mickey Stowers d/b/a Stowers Air Craft

 Evidence of Mickey Stowers's activities and contacts with Texas include the
following: (1) Stowers traveled to Texas on behalf of Aircraft Structures, Inc. once within the last
nine years to purchase a part for an airplane and (2) it is possible that Stowers traveled to Texas to
pick up wreckage, sent payment to Texas, and had repair customers in Texas, but he has no
recollection of this and there are no records from which he could recall because he destroys all
business records older than two years. In his second affidavit, Stowers stated that "during the time
[he] was a sole proprietor, [he] did not recall a single instance in which [he] did business in the State
of Texas or went to Texas for a business purpose, [he did] not recall a single customer in the State
of Texas, and [he did] not recall doing any business of any kind with Texas residents."

 The Robertses contend that any alleged contacts with Texas by Stowers as an agent
of Aircraft Structures, Inc. can be construed for purposes of personal jurisdiction as contacts of
Stowers individually. In support of this contention, the Robertses cite the recent cases of Pessina
v. Rosson, No. 03-01-00204-CV, 2001 Tex. App. LEXIS 7631, at *8-9 (Tex. App.--Austin Nov.
15, 2001, no. pet. h.) (to be published), and Shapolsky v. Brewton, 56 S.W.3d 120, ___, 2001 Tex.
App. LEXIS 4329, at *24 (Tex. App.--Houston [14th Dist.] June 28, 2001, no pet. h.) (to be
published). Further, they state that their contention necessarily follows from the general rule in
Texas that corporate agents are individually liable for tortious acts committed while in service to
their corporation. While we agree with the general rule, it has no application in the case before us. 
Unlike in the Pessina and Shapolsky cases, Stowers's alleged bad acts did not occur while he was
serving as a corporate agent for Aircraft Structures, Inc. Additionally, there is no allegation of fraud
or any allegation that Aircraft Structures, Inc. is Stowers's alter ego. Absent these types of
allegations, acts taken by Stowers as an agent for Aircraft Structures, Inc. cannot be imputed to him
individually. See Cadle v. Graubart, 990 S.W.2d 469, 472 (Tex. App.--Beaumont 1999, no pet.);
Vosko v. Chase Manhattan Bank, N.A., 909 S.W.2d 95, 99-100 (Tex. App.--Houston [14th Dist.]
1995, writ denied). In this case, any alleged contacts between Aircraft Structures, Inc. and Texas
cannot be used as a basis for asserting personal jurisdiction over Stowers. 

 Finally, the Robertses contend that because Stowers stated in his deposition it was
"possible" that in the past twenty-five years he had gone to Texas to pick up airplane wreckage and
had possibly done so on more than one occasion, possibly delivered payment to Texas, and possibly
at some prior time had other repair customers located in Texas, this showed that Stowers
purposefully directed his business activities toward Texas and therefore he did not negate all bases
for general jurisdiction. We find no basis in law for the Robertses' inference that Stowers's
statement that he possibly had other contacts with Texas meant that he purposefully directed his
business toward Texas and we decline to draw such an inference from his deposition testimony. 
Additionally, we note that while the record indeed reflects that Stowers stated he had "possibly" in
the past twenty-five years had other contacts with the State of Texas, he followed up these statements
by stating that he does not recall going to Texas to look at any other parts or aircraft other than the
one trip in 1991 on behalf of Aircraft Structures, Inc., he never had any planes delivered to him by
third parties from Texas, when he sells planes he receives payment in Oklahoma, he does not take
his planes outside Oklahoma to show them, and he thought that he had never sold a plane to a Texas
resident. We hold that Stowers's statements regarding possible contacts do not lead to the inference
that he indeed had substantial, continuous and systematic contacts with Texas necessary for general
jurisdiction. 

 When considering all of Mickey Stowers's activities and contacts with Texas in light
of the well-established principles for invoking general jurisdiction, we hold that Stowers negated the
bases for general jurisdiction by establishing that his contacts with Texas were neither continuous
and systematic nor substantial as required for the trial court to exercise personal jurisdiction.


Conclusion


 We sustain appellants' first issue. Because we have determined that Stowers d/b/a
Stowers Air Craft and Aircraft Structures, Inc. negated the bases for general jurisdiction, we need
not address their remaining contention that to find Texas courts have personal jurisdiction over them
would offend the traditional notions of fair play and substantial justice. Because appellants negated
the bases for general jurisdiction, the trial court's order denying appellants' special appearances is
reversed and the cause is remanded to the trial court with instructions to dismiss the claims for lack
of personal jurisdiction. 



 

 Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Remanded

Filed: December 20, 2001

Do Not Publish
1.   A trial court need not, but may--within thirty days after the interlocutory order is signed--file
findings of fact and conclusions of law. Tex. R. App. P. 28.1.