# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00480-CV

**Mickey Stowers d/b/a Stowers Air Craft and Aircraft Structures, Inc., Appellants**

**v.**

**Leon Roberts, Individually, and as Independent Administrator of the Estate of Kevin Phillip Roberts, Deceased, and Patricia Roberts, Appellees**

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY NO. 72,302A, HONORABLE GUY HERMAN, JUDGE PRESIDING

This is an interlocutory, accelerated appeal from the trial court's denial of special appearances. Mickey Stowers d/b/a Stowers Air Craft, an Oklahoma resident and sole proprietorship, and Aircraft Structures, Inc., an Oklahoma corporation, appeal following the trial court's denial of their special appearances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2002); Tex. R. Civ. P. 120a. The sole appellate issue is whether Texas courts can assert personal jurisdiction over the nonresident appellants. We reverse the trial court's order denying the special appearances.

### Background

In April 1999, Kevin Roberts died when the Cessna airplane he was flying crashed in Oklahoma. Leon and Patricia Roberts, Kevin's parents, in conjunction with probating Kevin's estate, filed a wrongful death action and alleged strict product liability claims and various negligence claims against all prior owners of the airplane as well as all entities they were aware of that performed repairs

on the airplane. Mickey Stowers d/b/a Stowers Air Craft was among the defendants that had previously owned the airplane and had performed repairs on it. Aircraft Structures, Inc., an Oklahoma corporation created in 1991 by Mickey Stowers, was also named as a defendant in the suit.

The appellants filed special appearances, arguing that their contacts with Texas did not permit the trial court to exercise personal jurisdiction over them. Specifically, appellants contended that they were not subject to the jurisdiction of Texas courts because they have not had sufficient minimum contacts with Texas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1947)). Additionally, they contended that the trial court's order offended the traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

Mickey Stowers filed an affidavit supporting both parties' special appearances. According to his affidavit, since 1978, he has been in the business of purchasing damaged aircraft, repairing them and then reselling them. In 1982, Stowers d/b/a Stowers Air Craft purchased the Cessna airplane at issue from someplace other than Texas. At the time of purchase, the airplane was damaged. Stowers repaired the plane and, in 1984, sold it to a buyer on the east coast. After selling the plane, Stowers was unaware of the plane's whereabouts until nineteen years later when he was named as a defendant in the underlying lawsuit. Stowers stated that his ownership, repair and sale of the airplane did not involve any contacts with Texas. Further, he stated that neither he nor Aircraft Structures, Inc. had any significant contacts with Texas.

Later, during a deposition, Stowers stated that he visited Texas once in the last nine years but only on behalf of Aircraft Structures, Inc. to purchase an airplane part in Dallas. Additionally, he stated that Aircraft Structures, Inc. had on five previous occasions performed

2

airplane repairs in Oklahoma for a single Texas corporate client within the year. He stated that Aircraft Structures, Inc. placed advertisements in "Trade-A-Plane" magazine, a publication with a national circulation that includes Texas. Since 1978, Stowers stated that he has sold as many as five airplanes in one year and as few as zero planes in a year. He could not recall selling any airplanes to Texas residents. Additionally, he stated that it is his standard business practice to destroy all business records over two years old.

Stowers then filed a second affidavit and acknowledged the contacts he referred to in his deposition. Additionally, Stowers stated that it was "possible" that he may have done business in Texas in 1982 through 1984 while he was a sole proprietor, but he could not recall anything. He also stated that "he didn't think" he had sold any airplanes to Texas residents but then stated that he had "sold a lot of a airplanes in [his] lifetime." He also stated that neither he, his family, nor his company have property, bank accounts, or any other contacts with Texas.

The Robertses responded to the special appearance and contended that Texas courts could exercise personal jurisdiction over Stowers and Aircraft Structures, Inc. based on Stowers's statements in his second affidavit and his deposition. Following a hearing, at which no additional evidence was offered, the trial court denied appellants' special appearances. Additionally, the trial court declined the appellants' request to make findings of fact and conclusions of law.[1]

---

[1] A trial court need not, but may—within thirty days after the interlocutory order is signed—file findings of fact and conclusions of law. Tex. R. App. P. 28.1.

**Discussion**

*Personal Jurisdiction*

A Texas court may exercise jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction comports with due process. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997). The broad language of the Texas long-arm statute permits an expansive reach, limited only by the federal constitutional requirements of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). As a result, we consider only whether it is consistent with federal due process for Texas courts to assert personal jurisdiction over Aircraft Structures, Inc. and Stowers. *Guardian Royal*, 815 S.W.2d at 226.

The federal due process clause protects a person's liberty interest in not being subject to binding judgments of a forum with which that person has established no meaningful contacts, ties, or relations. *Burger King Corp.*, 471 U.S. at 471-72 (citing *International Shoe Co.*, 326 U.S. at 319). Under the federal constitutional test of due process, a state may assert personal jurisdiction over a nonresident defendant only if the defendant has purposefully established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* at 476; *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex 1996).

*Minimum Contacts*

The test for minimum contacts is whether Stowers d/b/a Stowers Air Craft and Aircraft Structures, Inc. purposefully availed themselves of the privilege of conducting activities in

4

Texas, thereby invoking the benefit and protection of Texas laws. *See Schlobohm*, 784 S.W.2d at 357-58. This requirement ensures that a nonresident defendant will be "haled" into court only as a result of intentional activities, so that it is reasonable for the nonresident defendant to expect the call of a Texas court. *Guardian Royal*, 815 S.W.2d at 226; *Schlobohm*, 784 S.W.2d at 357-58.

The minimum contacts analysis has been refined into two types of jurisdiction—specific and general jurisdiction. Specific jurisdiction exists when the cause of action arises out of or relates directly to the nonresident defendant's contacts with the forum state. *Guardian Royal*, 815 S.W.2d at 230. In such an instance, the defendant's specific activities must have been purposefully directed toward the forum state. *Id.* at 228. Under specific jurisdiction, the minimum contacts analysis focuses on the relationships among the defendant, the forum, and the subject of the litigation. *Id.* Under the general jurisdiction analysis, when the cause of action does not arise from or relate directly to activities conducted within the forum state, the defendant's contacts with the forum state must be continuous and systematic. *Id.* Contacts with the forum state that are random, fortuitous, or attenuated are insufficient to support jurisdiction. *CSR, Ltd.*, 925 S.W.2d at 594. For general jurisdiction, the minimum contacts analysis is more demanding and requires a showing of substantial activities within the forum state. *Schlobohm*, 784 S.W.2d at 357.

The parties agree that appellants had no contacts or activities directed at Texas that related to the airplane at issue and that appellants' contacts with Texas were not the type that would support minimum contacts based on specific jurisdiction. Consequently, at issue is only whether appellants' contacts and activities directed at Texas were the type that would support minimum contacts based on general jurisdiction. The issue in this appeal, therefore, is not whether appellants have had any contacts with Texas; rather, the issue is whether their contacts rise to a level of

5

continuous and systematic contacts sufficient to permit a Texas court to exercise general jurisdiction over them. *See Guardian Royal*, 815 S.W.2d at 230.

The inquiry for determining whether minimum contacts exist to establish general jurisdiction "demands . . . that all contacts be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity." *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 680 (Tex. App.—Fort Worth 2001, no pet.) (quoting *Schlobohm*, 784 S.W.2d at 359). The focus of our inquiry must be on the nature and quality of the defendant's contacts rather than only on the sheer number of contacts. *Id.* (citing *Guardian Royal*, 815 S.W.2d at 230 n.11); *see also Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 413-14 (1984) (despite defendant's many contacts with forum state, these contacts were inadequate to constitute continuing and systematic contacts).

### Challenging Personal Jurisdiction

Defendants who challenge a court's exercise of personal jurisdiction through a special appearance carry the burden of negating all bases for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982); *Nikolai v. Strate*, 922 S.W.2d 229, 236 (Tex. App.—Fort Worth 1996, writ denied); *Hayes v. Wissel*, 882 S.W.2d 97, 99 (Tex. App.—Fort Worth 1994, no writ). The court in deciding a special appearance motion shall consider the pleadings, any stipulations made by and between the parties, affidavits and attachments filed by the parties, the results of discovery processes, and any oral testimony presented at the hearing. Tex. R. Civ. P. 120a(3). In challenging the trial court's exercise of personal jurisdiction over them, Stowers and Aircraft Structures, Inc. bore the

burden to prove that they did not have the necessary minimum contacts required to establish general jurisdiction, that is, their activities directed toward and their contacts with Texas were not substantial or of a continuous and systematic nature.

### *Standard of Review*

The existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. We determine the appropriateness of the trial court's resolution of any factual disputes by an ordinary sufficiency of the evidence review based on the entire record. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex. App.—Houston [14th Dist.] 1997, no writ). If the trial court's order is based on undisputed or otherwise established facts, we conduct a *de novo* review of the order. *Id.*

In this instance, there are no disputed fact issues. Stowers's two affidavits and a portion of his deposition provide the only evidence regarding personal jurisdiction and there is no challenge to the evidence submitted. The parties simply disagree about whether, based on the evidence submitted, the court could exercise general jurisdiction over the nonresident appellants. We will evaluate each appellant separately and determine whether either party successfully negated general jurisdiction.

### *Aircraft Structures, Inc.*

Evidence of Aircraft Structures, Inc.'s activities and contacts with Texas include the following: (1) Stowers traveled to Texas on behalf of Aircraft Structures, Inc. once within the last nine years to purchase a part for an airplane unrelated to this litigation; (2) Aircraft Structures, Inc.

7

performed repair work in Oklahoma for an unrelated Texas company based in Dallas on five occasions in the past year; and (3) Aircraft Structures, Inc. placed advertisements in "Trade-A-Plane" magazine, a publication with a national circulation that includes Texas and did not advertise in any other trade publications. Other than these contacts, Stowers stated that "Aircraft Structures, Inc. has done no other business in the State of Texas" and has no "property, bank accounts or other contacts in the State of Texas."

The Robertses contend that these contacts are sufficient to establish general jurisdiction while Aircraft Structures, Inc. contends they are not. In reviewing the trial court's decision *de novo*, we must determine whether these activities and contacts, individually or when considered as a whole, constitute "continuing and systematic" activities and contacts with Texas that rose to the level of "substantial" contacts and created a business presence within Texas to support general jurisdiction over Aircraft Structures, Inc. *Michel*, 45 S.W.3d at 672 (citing *Fish v. Tandy Corp.*, 948 S.W.2d 886, 891 (Tex. App.—Fort Worth 1997, writ denied); *Hotel Partners v. Craig*, 993 S.W.2d 116, 120 (Tex. App.—Dallas 1994, writ denied); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, writ denied)).

Routine sales and other profit-making activities in another state may subject a corporation to general jurisdiction in that State. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Robertses cite *General Electric Company v. Brown & Ross International Distributors, Inc.*, 804 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1990, writ denied), and argue that Aircraft Structures, Inc.'s Texas-client contact is sufficient for general jurisdiction. In *General Electric*, the nonresident defendant, Brown & Ross, had twenty Texas customers and was engaged in "substantial" sales of counterfeit General Electric parts in Texas. Additionally, after

8

Brown & Ross set up an agent in Texas, it changed its letterhead to reflect Houston as one of its business locations. *Id.* at 531. Also, Brown & Ross's agent in Texas told many Texas companies that Brown & Ross was distributing genuine General Electric parts. *Id.* at 532. The *General Electric* court held that Brown & Ross had conducted substantial activities in Texas and its tortious acts—the distribution of counterfeit General Electric parts and the subject of the lawsuit—were directly targeted at Texas. *Id.*

There is no allegation in the pleadings that Aircraft Structures, Inc. or its employees during their employment committed any tortious acts in Texas. Stowers's one trip to Texas on behalf of Aircraft Structures, Inc., along with five repairs for one Texas client performed in Oklahoma, are in stark contrast to Brown & Ross's contacts and alleged deceptive activities targeted directly at Texas. The acts of Aircraft Structures, Inc. in sending a representative to Texas to buy an airplane part and having one client in Texas does not show that Aircraft Structures, Inc. purposefully availed itself of the privileges of conducting business in Texas. *See Schlobohm*, 784 S.W.2d at 359. These acts do not exhibit continuous and systematic contacts necessary for general, personal jurisdiction. *See Helicopteros*, 466 U.S. at 408; *Reyes v. Marine Drilling Co.*, 944 S.W.2d 401, 404-05 (Tex. App.—Houston [14th Dist.] 1997, no writ) (Delaware corporation's purchase of $183 million in goods from 471 Texas vendors, and selling $851,511.88 worth of material to Texas companies were not continuous and systematic contacts that warranted general jurisdiction over nonresident defendant); *cf. World-Wide Volkswagen*, 444 U.S. at 297.

Moreover, the existence of a contract between a nonresident defendant and a Texas party does not by itself establish personal jurisdiction over the nonresident. *See TeleVentures, Inc. v. International Game Tech.*, 12 S.W.3d 900, 909 (Tex. App.—Austin 2000, pet. denied). In

9

*TeleVentures*, the nonresident defendant executed letters of intent with the Texas plaintiff and had numerous communications with entities in Texas, but these were not the type of continuous and systematic contacts necessary for the court to exercise specific personal jurisdiction over the nonresident defendant. *Id.* Consequently, it follows that Aircraft Structures, Inc.'s one customer for whom the company performed five repairs in Oklahoma and made one trip to Texas to purchase a part did not constitute continuous and systematic contacts for general jurisdiction.

Finally, the Robertses contend that Aircraft Structures, Inc.'s advertisements in the nationally circulated trade publication "Trade-A-Plane," which was sold in Texas, constituted continuous and systematic contacts that established general jurisdiction. We disagree. Advertising in national media, as contrasted with state or local publications directed specifically at Texas residents, is not evidence of systematic and continuous activities purposefully directed at Texas to establish general jurisdiction. *See Michel*, 45 S.W.3d at 673 (citing *Hayes*, 882 S.W.2d at 98). We hold that Aircraft Structures, Inc.'s advertisements in the nationally circulated trade publication Trade-A-Plane was not an activity purposefully directed at Texas.

Considering all of Aircraft Structures, Inc.'s activities and contacts with Texas in light of the well-established principles for invoking general jurisdiction, we hold that Aircraft Structures, Inc. negated the bases for general jurisdiction by establishing that its contacts with Texas were neither continuous and systematic nor substantial as required for the trial court to exercise personal jurisdiction.

***Mickey Stowers d/b/a Stowers Air Craft***

Evidence of Mickey Stowers's activities and contacts with Texas include the following: (1) Stowers traveled to Texas on behalf of Aircraft Structures, Inc. once within the last nine years to purchase a part for an airplane and (2) it is possible that Stowers traveled to Texas to pick up wreckage, sent payment to Texas, and had repair customers in Texas, but he has no recollection of this and there are no records from which he could recall because he destroys all business records older than two years. In his second affidavit, Stowers stated that "during the time [he] was a sole proprietor, [he] did not recall a single instance in which [he] did business in the State of Texas or went to Texas for a business purpose, [he did] not recall a single customer in the State of Texas, and [he did] not recall doing any business of any kind with Texas residents."

The Robertses contend that any alleged contacts with Texas by Stowers as an agent of Aircraft Structures, Inc. can be construed for purposes of personal jurisdiction as contacts of Stowers individually. In support of this contention, the Robertses cite the recent cases of *Pessina v. Rosson*, No. 03-01-00204-CV, 2001 Tex. App. LEXIS 7631, at \*8-9 (Tex. App.—Austin Nov. 15, 2001, no. pet. h.) (to be published), and *Shapolsky v. Brewton*, 56 S.W.3d 120, ___, 2001 Tex. App. LEXIS 4329, at \*24 (Tex. App.—Houston [14th Dist.] June 28, 2001, no pet. h.) (to be published). Further, they state that their contention necessarily follows from the general rule in Texas that corporate agents are individually liable for tortious acts committed while in service to their corporation. While we agree with the general rule, it has no application in the case before us. Unlike in the *Pessina* and *Shapolsky* cases, Stowers's alleged bad acts *did not occur* while he was serving as a corporate agent for Aircraft Structures, Inc. Additionally, there is no allegation of fraud or any allegation that Aircraft Structures, Inc. is Stowers's alter ego. Absent these types of allegations, acts taken by Stowers as an agent for Aircraft Structures, Inc. cannot be imputed to him individually. *See*

11

*Cadle v. Graubart*, 990 S.W.2d 469, 472 (Tex. App.—Beaumont 1999, no pet.); *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99-100 (Tex. App.—Houston [14th Dist.] 1995, writ denied). In this case, any alleged contacts between Aircraft Structures, Inc. and Texas cannot be used as a basis for asserting personal jurisdiction over Stowers.

Finally, the Robertses contend that because Stowers stated in his deposition it was "possible" that in the past twenty-five years he had gone to Texas to pick up airplane wreckage and had possibly done so on more than one occasion, possibly delivered payment to Texas, and possibly at some prior time had other repair customers located in Texas, this showed that Stowers purposefully directed his business activities toward Texas and therefore he did not negate all bases for general jurisdiction. We find no basis in law for the Robertses' inference that Stowers's statement that he possibly had other contacts with Texas meant that he purposefully directed his business toward Texas and we decline to draw such an inference from his deposition testimony. Additionally, we note that while the record indeed reflects that Stowers stated he had "possibly" in the past twenty-five years had other contacts with the State of Texas, he followed up these statements by stating that he does not recall going to Texas to look at any other parts or aircraft other than the one trip in 1991 on behalf of Aircraft Structures, Inc., he never had any planes delivered to him by third parties from Texas, when he sells planes he receives payment in Oklahoma, he does not take his planes outside Oklahoma to show them, and he thought that he had never sold a plane to a Texas resident. We hold that Stowers's statements regarding possible contacts do not lead to the inference that he indeed had substantial, continuous and systematic contacts with Texas necessary for general jurisdiction.

When considering all of Mickey Stowers's activities and contacts with Texas in light of the well-established principles for invoking general jurisdiction, we hold that Stowers negated the

bases for general jurisdiction by establishing that his contacts with Texas were neither continuous and systematic nor substantial as required for the trial court to exercise personal jurisdiction.

## Conclusion

We sustain appellants' first issue. Because we have determined that Stowers d/b/a Stowers Air Craft and Aircraft Structures, Inc. negated the bases for general jurisdiction, we need not address their remaining contention that to find Texas courts have personal jurisdiction over them would offend the traditional notions of fair play and substantial justice. Because appellants negated the bases for general jurisdiction, the trial court's order denying appellants' special appearances is reversed and the cause is remanded to the trial court with instructions to dismiss the claims for lack of personal jurisdiction.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Remanded

Filed:  December 20, 2001

Do Not Publish

13